PARDEE *vs.* VAN ANKEN and others.

VAN ANKEN, special guardian, &c. *vs.* PARDEE and others.

Where a mortgage is given to the special guardian of an infant, for the benefit of the latter, the special guardian is the proper person to file a bill for the redemption and assignment of a senior mortgage upon the same premises.

A junior mortgagee may file a bill in equity against the holder of a senior mortgage, to redeem, and to compel an assignment of the senior mortgage, after tendering the amount due thereon, and demanding an assignment; where a *satisfaction* of the senior mortgage would not be as beneficial to the plaintiff as an *assignment* thereof.

The right of a junior mortgagee to an assignment of a senior mortgage springs directly from the general right of redemption; which is a correspondent right to that of foreclosure. *Per* GRIDLEY, J.

Every person who has any right to, interest in, or lien upon, the lands embraced in a mortgage which is liable to be foreclosed, is entitled to a redemption. *Per* GRIDLEY, J.

The owner of the *fee* of the equity of redemption redeems the land itself; and the decree in such cases directs the mortgagee to convey all his right and title to the premises to the redeeming party. The owner of a junior incumbrance redeems not the *premises* strictly speaking, but the senior incumbrance. And he is entitled, not to a conveyance of the premises, but to an assignment of the security. *Per* GRIDLEY, J.

IN EQUITY.   Original and cross bills.   The original bill was filed to foreclose a mortgage, which had been executed by one

---

Pardee *v.* Van Anken.

---

Fuller, a former owner of the premises in question, (which consisted of a large and valuable farm in the county of Onondaga,) and was the oldest lien on the premises. After the execution of this mortgage, Fuller conveyed the premises (subject to said mortgage,) to Edward Morey and the father of William C. Morey, as tenants in common. The father of William died, leaving Betsey Morey his widow, and William C. his only heir. Subsequently, William C. Morey being an infant, all his interest in the premises was sold by order of the court of chancery, to Edward Morey, and by a like order of that court, the purchase price was secured to said infant by a bond of the purchaser and a mortgage on Edward's moiety, in addition to that of the infant, executed to Van Anken, the special guardian of the infant, instead of the clerk of the court. Edward also executed to Van Anken, for the benefit of the infant, an agreement to pay off the senior mortgage of Fuller and to save the infant harmless therefrom.

Before the filing of the original bill, Van Anken, in behalf of the infant, tendered the entire amount of the Fuller mortgage to Pardee, and demanded an assignment of it, stating the reasons why it was asked, and offering to be at all the expense of the assignment. Pardee, after taking time to consider the proposition, declined to make the assignment, but offered to receive the money due and to execute a satisfaction piece upon his mortgage. He then filed his bill of foreclosure, and the cross-bill was filed to redeem and to compel an assignment.

*G. F. Comstock & S. B. Jewett,* for Pardee, insisted 1. That a payment and satisfaction of the mortgage would afford the infant all the protection that an assignment would. (4 *John. Ch.* 370. 3 *Paige,* 122. 2 *Story,* 1022. 2 *John. Ch.* 503. 1 *Story,* §§ 493, 4. 2 *Cowen,* 118, 195. 10 *John.* 595, 503. 1 *Cowen,* 122. 5 *Id.* 202. 5 *Hill,* 272. 4 *John. Rep.* 43.) 2. That the special guardian could not demand or receive an assignment for the infant; his power being only to sell the land of the infant, and to take security, &c. (2 *R. S.* 194. *Rules* 161, 147, 148.)

*S. A. Goodwin,* for Van Anken.

*By the Court,* GRIDLEY, J.   The pressure of our various duties compels us, for want of time, to state in a very brief and informal manner, the conclusions at which we have arrived in this cause.

I. We think that the special guardian being the *mortgagee,* for the benefit of the infant, in a mortgage junior to that held by the complainant in the first of the above entitled suits, was the proper party to file a bill for the redemption and assignment of the senior mortgage; not as *special guardian* merely, but as the *mortgagee,* representing the interests of the infant with respect to the mortgage.   A bill for a foreclosure and sale of the premises would be properly filed in his name, and so, we think, would be a bill filed for a redemption and assignment.   It is true that by the general rules of the court of chancery, the mortgage executed on the sale of the infant's interest in the premises in question should have been made to the clerk of the court; but it is equally true that by the statute (2 *R. S.* 195, § 185) the mode of investment of the proceeds of the sale was in the discretion of the court of chancery.   And that court has the power to depart from, or dispense with, those rules, as it did in this instance.   (1 *Paige,* 351.   9 *Id.* 391.)   The defendant Pardee has no concern with the question whether the infant had funds of his own with which to make the redemption; whether they were advanced by the mortgagee, or whether, in that event, he will be reimbursed by order of the court of chancery.   It is enough for him that the senior *mortgagee* tendered the money due on the mortgage held by him, and demanded its redemption for the more perfect protection of the rights of the infant under the junior mortgage.

II. We are also of the opinion that the defendant Pardee was bound, in equity, to grant the redemption and assign the mortgage.   It is argued, and authorities are cited to show, that by *payment* and *satisfaction* of the mortgage, the junior incumbrancer would, *as surety,* be subrogated to all the rights of the principal creditor, so that an assignment would be, for that

reason, unnecessary.   We believe, however, and shall, under a subsequent head, attempt to show, that the infant, whose interest the junior mortgagee represents, has rights which cannot be fully protected without an assignment of the mortgage.   The right to an assignment of the mortgage, in our judgment, can be maintained upon several grounds.

(1.) It springs directly from the general right of *redemption*, which is a correspondent right to that of *foreclosure.*   (2 *Story's Eq.* § 1024.)   Every person who has any right to, interest in, or lien upon the lands embraced in a mortgage which is liable to be foreclosed, is entitled to a redemption.   The owner of the *fee* of the equity of redemption redeems the *land itself*, and the decree in such case directs the mortgagee to convey all his right and title to the premises to the redeeming party, and to deliver over all deeds, writings, &c. relating to the same.   The owner of a junior incumbrance redeems not the *premises*, strictly speaking, but the *senior incumbrance ;* and then he is entitled, not to a *conveyance* of the *premises*, but to an *assignment* of the *security.*   The difference in the nature of the relief granted, in the two cases, depends on the difference in the nature of the interest in the premises held by the redeeming party, which confers on him the right to redeem.·   It is said in 2 *Story's Equity,* § 1023, " that all persons who have acquired any interest in the lands mortgaged have a clear right to disengage the property from all incumbrances, in order to make their own claims beneficial or available."   " Hence," he says, " a tenant for life, &c. and indeed any other·person being an incumbrancer, or having a legal or equitable title, or *lien* thereon, may insist on a redemption of the mortgage in order to the due enforcement of their claims and interests respectively in the land. And when any such person does so redeem, he or she becomes substituted to the rights and interests of the original mortgagee in the land exactly as in the civil law."   The civil law required an assignment or a cession of the debt or security, on payment by the party, to be made to him even though that security were a *bond* only.   (1 *Story,* § 494.   *Evans' Pothier, n.* 275, 280, 282, 429, 430.   1 *Stor. Eq.* § 500.)   The manner in which, by

the rules of the civil law, one party became substituted to the rights of another in a bond, mortgage, or other security, was by decreeing an *assignment* or "*cession,*" as it was termed, of the security redeemed. (*See* 1 *Story*, §§ 494, 499, 500, 535, 6 ; *Evans' Pothier*, n. 275, 280, 281, 428, 429, 430.) It seems, therefore, that upon this well established principle of equity, the assignment of the mortgage should have been made.

(2.) The senior mortgage should be *assigned*, for other and special reasons applicable to this particular case and to the particular relation which the parties to this suit bear towards each other. The conveyances, by which the fee of the lands embraced in the mortgage has been successively transmitted to the present holder, all bearing on their face the condition that they were made subject to the Fuller mortgage, it follows that those lands were the *primary fund* for the satisfaction of that incumbrance. (*Jumel* v. *Jumel*, 7 *Paige*, 591.) Again ; not only was the same condition contained in the conveyance by the special guardian of the infant's interest in a moiety of the farm to Edward Morey, but the latter executed to the special guardian an agreement under seal, covenanting to pay off the Fuller mortgage, and to save harmless all persons interested in the premises. Now, upon this statement it is clear, that as between Van Anken the mortgagee, who represents the infant, and Edward Morey, the moiety of the premises which originally belonged to Edward Morey, should in equity be first applied to the payment of the Fuller mortgage, and that the personal liability of Edward Morey was a fund primary even to Edward's moiety of the land. The junior mortgagee, representing the infant's rights, may therefore be regarded in the light of a *surety*, as to the lands originally owned by the infant and which were embraced in that mortgage, while the individual moiety of Edward and more especially the personal liability of Edward, constituted the *principal* fund for the payment of the Fuller mortgage. Such was the equitable relation existing between those parties, and all the rights growing out of this relation of principal, surety and creditor would be capable of being enforced at the suit of Van Anken, were he, as the representative

Pardee v. Van Anken.

of the interests of the infant, the *assignee* and *holder* of the senior mortgage. He would be entitled to foreclose such mortgage against Edward Morey, and to have a personal decree against him for any deficiency that might remain due after applying the proceeds of the sale of the mortgaged premises. (2 *R. S.* 191, §§ 152, 153, 154. 9 *Paige*, 436, 453.) So too he would be entitled to a decree that Edward Morey perform his covenant, and save the infant harmless by paying off the senior incumbrance. In addition to this, it would be ordered, in the decree of sale, that Edward Morey's original moiety should be first sold. (*Stor. Eq.* §§ 849, 730. 6 *John. Ch. Rep.* 398, 406. 10 *Paige*, 595.)

We are now prepared to inquire what rights exist on the part of the surety, against the creditor, which a court of equity will enforce. Mr. Justice Story says, in his Equity Jurisprudence, (*vol.* 1, § 499,) that " courts of equity have gone further in their [sureties'] favor, and held them entitled, upon payment of the debt due from their principal to the creditor, to have the full benefit of all the collateral securities, both of a legal and equitable nature, which the creditor has taken as an additional pledge of his debt. Thus, for example, if at the time when the bond of the principal and surety was given, a mortgage was made by the *principal* to the creditor as an additional security for the debt; then if the surety pays the debt, he will *be entitled to have an assignment of that mortgage, and to stand in the place of the mortgagee.*" See also the strong language used by the lord chancellor in the case of *Hodgson* v. *Shaw,* (3 *Myl. & Keene,* 190, 192.) So too in *Halsey* v. *Reed,* (9 *Paige,* 453,) it was held that where the owner of land incumbered by a mortgage, sells a part of the land to a purchaser, who *assumes the payment* of the whole mortgage, and the owner of the residue is obliged to pay off the incumbrance, the *latter is entitled to an assignment of it, to enable him to obtain satisfaction out of the land of the person who has assumed such payment.* If this be law, then is Pardee bound, on being paid his debt, to assign the senior mortgage to the junior mortgagee, to enable him to obtain satisfaction out of the moi-

Pardee *v.* Van Anken..

ety of Edward Morey, and to enforce against the latter his per-
sonal covenant of indemnity.    In *Chesebrough* v. *Millard*, (1
*John. Ch.* 409, 414,) the late Chancellor Kent held, upon a full
consideration of the English authorities, that if a bond creditor
should exact the whole of his demand *against one of the sure-*
ties, that surety was entitled to be *substituted* in his place, and
to a cession of his rights and securities, as if he were a pur-
chaser against the *principal debtor*, or his co-sureties, although,
in the particular case under his consideration, the surety was
not so situated as to claim such right.    In *King* v. *Baldwin*,
(2 *John. Ch.* 560,) the principle was laid down as clear law,
that a surety was entitled, either to call on the creditor by the
aid of the court of chancery to enforce his demand against the
principal debtor, or to pay the debt himself, when due, and on
such payment to be substituted in the place of the creditor.    In
*Hayes* v. *Ward*, (4 *John. Ch.* 123,) it is laid down that a surety
who pays the debt is entitled to be put in the place of the cred-
itor, and to all the means and to every remedy which the cred-
itor possesses, to enforce payment from the principal debtor.    In
*Burnet* v. *Denniston*, (5 *John. Ch.* 35,) it was decided that a
subsequent judgment or mortgage creditor was entitled to *re-*
*deem* of a senior mortgagee, by paying up the amount due on
his mortgage.    This case repudiates the English doctrine of
*tacking*, and also shows what is meant by *redeeming* from a
senior mortgagee.    On the 37th page of this report, it appears
that the junior mortgagee tendered the amount of the senior
mortgage and *demanded an assignment of it ;* and on the 40th
and 41st pages the chancellor declares the right of the junior
incumbrancer to redeem perfect ; and he holds the subsequent
sale on the mortgage irregular and void.    In 7 *John. Ch.* 213,
the chancellor affirms the right to an assignment under similar
circumstances, by a very strong implication, although he for
special reasons denied the application in that case.    (*See also,*
*to the same point,* 1 *Ves. sen.* 339 ; 1 *Atk.* 135 ; 2 *Vern.* 608 ;
11 *Ves.* 22.)
    It may be remarked here, that the doctrine laid down in sect,
499, a, b, &c. of Story's Equity Jurisprudence, whether it be

Pardee v. Van Anken.

the law of this state to the extent there expressed or not, forms no objection to a decree in this case. That doctrine denies the right of a co-obligor who is a surety in a *personal obligation*, as a bond, to pay up the debt and be subrogated to the rights of the creditor against the principal debtor, whether he takes an assignment of the security himself, and whether such assignment be made to himself or a third person. Judge Story obviously favors this doctrine, notwithstanding he admits the civil law to be otherwise, that the cases in England are conflicting, and that the current of authority in the state of New-York is against it. I repeat, however, that the case at bar steers clear of the principle in question. The security in the case before us consists of a *mortgage* as well as of a bond, and Judge Story himself holds that the doctrine does not apply to a mortgage. (1 *Stor. Eq.* § 499.) Again ; neither the infant nor the junior mortgagee is a *co-obligor* of the bond ; and neither owed the debt, nor was personally bound to pay it. (9 *Paige*, 90.)

(3.) There is another consideration, which would induce a court of equity, in a case like this, to order an *assignment* instead of a *satisfaction* of the mortgage. It is the undoubted object of the court, in enforcing the right of redemption, and in subrogating sureties to the rights of the creditor against the principal debtor, to afford full and adequate protection to the parties entitled to such redemption or subrogation, so far as that object can be accomplished consistently with the security of the creditor. Now, in *some* cases a *satisfaction* of the security would afford ample relief, as when a redemption is sought of a mortgage which forms the only outstanding lien on the premises. While in other cases nothing short of an *assignment* which shall keep the lien alive will afford adequate protection to the junior incumbrancer, as where there are intermediate liens between the senior incumbrance and that held by the redeeming party. In such a case, if the older mortgage is *satisfied*, the *lien* is *extinguished* at law, and the redeeming party is left to the complicated and uncertain remedy of an equitable substitution to protect himself against the intermediate incumbrances. Again ; the *satisfaction* of the senior mortgage leaves the redeeming

owner of the junior mortgage exposed to the danger of a total loss of the security thus paid off, provided the owner of the equity of redemption should sell the premises to a purchaser, who bought in good faith and upon evidence of the satisfaction of the prior mortgage. In this very case, had Edward Morey sold the premises to a bona fide purchaser, the next hour after the complainant Van Anken had paid the Fuller mortgage and satisfied it of record, the rights of the infant would have been irretrievably gone.

The facts of this case furnish another difficulty in the way of adequate relief, by way of *satisfaction* of the Fuller mortgage. In a suit for foreclosure, brought by Pardee, the junior mortgagee could not legally settle his subordinate and conflicting rights, with and against Edward Morey; (9 *Paige*, 538;) nor could he compel Pardee to enforce his claims against Edward Morey upon a foreclosure of the mortgage. (10 *Paige*, 597.) The chancellor in this case remarks, that there was no good reason why the party (whose relation to the holder of the senior mortgage was similar to that of Van Anken to Pardee) did not *pay his bond, and take an assignment of the bond and mortgage*, and proceed against the land, and the subsequent grantees thereof, for his indemnity. So in this case, the proper way was for the prior mortgagee to have paid Pardee's mortgage and taken an assignment of it; and then sought his equitable relief against Edward Morey, either to compel a sale of his moiety of the land in the first instance, or against him personally for any deficiency, or to compel him to perform his covenant to pay off the mortgage. It is no answer to this argument, that Edward Morey is supposed to be insolvent. There may be a revolution in his fortunes at any moment. He may, by devise, bequest or a fortunate speculation, become able to respond to the full amount of his obligations. His insolvency is an accident, which exists to-day, and may not exist tomorrow. It certainly furnishes no reason why the defendant Pardee should refuse to put the junior mortgagee in a condition to enforce all the rights which the law has given him against Edward Morey.

We are of the opinion, therefore, that a *satisfaction* of the

Fuller mortgage would not afford adequate relief to the infant, and that Pardee was bound in equity to have received the amount of his debt when it was tendered, and to have assigned the mortgage at the proper costs and charges of the junior mortgagee.

