RUFUS C. FROST, Appellant, *v.* THE YONKERS SAVINGS BANK, Respondent.

A junior mortgagee has the right to pay off or redeem from a senior mortgage, which is past due, when the owner of the latter is seeking to enforce collection by foreclosure.

A tender by the junior mortgagee to have the effect of payment of the prior mortgage, must be made in unmistakable terms, so that there could be no doubt of the intent to satisfy and discharge the senior mortgage, not to redeem and have a transfer of it.

The doctrine of *caveat emptor* applies to every purchaser of real estate sold by a sheriff on execution; he acquires no better title than the judgment-creditor would, had he purchased.

Where, therefore, by a valid agreement between the judgment-creditor and debtor, the lien of the judgment upon the real estate has been postponed and made subordinate to that of a junior mortgage, the purchaser, although he bought in ignorance of the agreement, takes the land subject to the lien of the mortgage.

Defendant was the owner of a mortgage upon premises upon which a judgment prior to the mortgage was a lien. The owner of a fourth mortgage upon the premises, for the purpose of inducing plaintiff to purchase, procured from the owner of the judgment a written instrument by which he agreed to postpone the lien of his judgment, and make it subordinate to that of the mortgage, and plaintiff thereafter purchased and took an assignment of said mortgage. The premises were sold upon execution issued on the judgment, and defendant purchased without notice or knowledge of said agreement. Defendant thereafter commenced a foreclosure of his mortgage, and judgment of foreclosure and sale was rendered, and the premises were advertised for sale thereunder. Plaintiff thereupon tendered to defendant the amount found due by the foreclosure judgment, with interest and costs, and demanded a transfer of the mortgage and judgment. *Held,* that the tender did not amount to a payment and satisfaction of the mortgage and judgment; but that plaintiff had the right to redeem, and the tender was sufficient without a tender of the amount of the judgment to entitle him to a transfer of the securities; that plaintiff, as assignee of the mortgage, was entitled to the benefit of the agreement postponing the lien of the judgment, as it made the mortgage the senior security; and that its character, as such, was not affected by the sale under the judgment.

*Frost* v. *Yonkers Savings Bank* (8 Hun, 26) reversed, in part

(Submitted June 22, 1877; decided September 25, 1877.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing, in part, a

judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 8 Hun, 26.)

This action was brought to restrain defendant from selling certain premises under a judgment of foreclosure upon a mortgage thereon, and to have the mortgaged premises declared free and discharged from the lien of the mortgage, or that plaintiff be entitled to redeem. The referee found, in substance, the following facts :

On the 3d day of July, 1867, one George Thomas recovered a judgment against Hugh McElroen and another for $434.33, which judgment was duly docketed. On the 9th day of May, 1868, said judgment was assigned and transferred to one Ralph E. Prime.

On the 20th day of June, 1872, said McElroen (who was then the owner of the premises described in the complaint), executed to the defendant a mortgage covering the premises described in the complaint, to secure the payment of the sum of $4,000 and interest, which mortgage was duly recorded. On the 1st day of January, 1874, said McElroen executed to one William F. Lawrence a mortgage covering the premises to secure the payment of the sum of $3,000, which mortgage was duly recorded. On the 1st day of May, 1874, the said mortgage was assigned by Lawrence to the plaintiff. Prior to the assignment of said last-mentioned mortgage, and as an inducement to the plaintiff to purchase the same, the said William F. Lawrence agreed to and accordingly procured an agreement in writing from said Prime, by which the lien of the said judgment was postponed and made subordinate to the lien of said mortgage. On the 4th of January, said premises were sold on an execution issued on said judgment and were purchased by defendant, he having no notice of said agreement postponing the lien of the judgment. In February, 1875, defendant commenced an action for the foreclosure of its mortgage, and judgment of foreclosure and sale was entered in said action on the 22d day of March, 1875, and the premises covered by said mortgage were advertised for sale. On

the 21st day of May, 1875, the plaintiff made a lawful tender to the defendant of the amount due upon said judgment of foreclosure and sale, and interest and costs and expenses, and claimed and demanded of said defendant the right to redeem, as junior mortgagee, the said mortgage and judgment of foreclosure and sale, and a transfer of said mortgage or judgment of foreclosure to the said plaintiff; defendant refused to receive the sum so tendered unless the plaintiff would pay, in addition to the amount so due to the defendant upon such judgment of foreclosure and sale, the sum for which the premises in question were sold under the aforesaid judgment. Intervening the said mortgage of the defendant and the mortgage of the plaintiff, the said McElroen executed two other mortgages covering the premises in question, which mortgages were both liens upon said premises prior to the lien of plaintiff's mortgage. The premises in question are an inadequate security for the amount due upon the mortgage of plaintiff and the prior liens thereon.

As conclusions of law, the referee found: That the tender so made to the defendant did not discharge the lien of said mortgage, nor did such tender invalidate the judgment of foreclosure and sale, or in any respect impair its force and effect.

That the lien of the Thomas judgment was, by virtue of the said agreement, postponed, and became subordinate to the lien of the plaintiff's mortgage, and that the rights and interest of the purchaser upon the execution sale are subordinate and subsequent to the lien of the said mortgage.

That the plaintiff was entitled to redeem, and to an assignment of said mortgage and judgment of foreclosure from the defendant, upon the payment to the defendant of the amount due thereon to the 21st day of May, 1875.

Judgment was entered accordingly.

Both parties appealed, plaintiff from that portion of the judgment adjudging that the tender did not discharge the lien of the mortgage, defendant from the residue thereof.

The General Term affirmed that portion of the judgment appealed from by plaintiff, and reversed the residue.

*Samuel A. Noyes,* for the appellant. The tender by plaintiff to defendant of the full amount due upon its decree of foreclosure operated to discharge the lien of defendant's mortgage and cancel the decree. (*Kortwright* v. *Cady,* 21 N. Y., 343; *Stoddard* v. *Hart,* 23 id., 560; *Hartley* v. *Tatham,* 1 Keyes, 222; *Dings* v. *Parshall,* 7 Hun, 522.) The argument that the Prime agreement to postpone had not been recorded, is without any force. (3 R. S. [5th ed.], 45, 59; Rorer on Judicial Sales, 225, § 629; *Gilman* v. *Brown,* 1 Mason, 221; *Jackson* v. *Chamberlain,* 8 Wend., 625; *Wood* v. *Chapin,* 13 N. Y., 521.) It is immaterial whether Baird or defendant, at the time of the execution sale, knew of the existence of the Prime agreement or not. (Rorer on Judicial Sales, 1–14, 28, 29, 252, § 720; *Carpenter* v. *Shetwell,* 11 N. Y., 71, 76; *Swan* v. *Saddlemire,* 8 Wend., 681.) No defence of latent equities could exist. (*Beebe* v. *Bank of N. Y.,* 1 J. R., 553; · *Mickles* v. *Townsend,* 18 N. Y., 575; *Bush* v. *Lathrop,* 22 id., 535.) As defendant had no other lien than its mortgage upon the premises in question, plaintiff had a lawful right, as a subsequent mortgagee and lienor, to the redemption. (*Pardee* v. *Van Auken,* 3 Barb., 534; *Ellsworth* v. *Lockwood,* 42 N. Y., 89, 96; *Trimm* v. *Marsh,* 54 id., 599; 4 Kent's Com. [Holmes' 12th ed.], 162, note; *Averill* v. *Taylor,* 8 N. Y., 44.)

*Matt. H. Ellis,* for the respondent. This action being one in equity, whatever remedies are invoked must be subject to the equitable rights of all parties whose interests are affected. (1 Kent, 163; 2 Barb. Ch. Pr., 194.) Plaintiff could not redeem unless he paid the amount bid on the sale. (*People* v. *Ransom,* 2 Hill, 51; 2 N. Y., 490.) The tender by plaintiff did not oblige the creditor to accept it or discharge the lien of the mortgage. (*Harris* v. *Jex,* 66 Barb., 232.)

EARL, J. The plaintiff holds a fourth mortgage, two mortgages intervening between his and defendant's mortgage. If the defendant is permitted to sell under its judgment of foreclosure, it will destroy plaintiff's investment; he will be obliged to raise the money and bid enough to pay all the mortgages and to pay all the expenses of the sale besides. He may thus be subjected to great embarrassment, loss, and damage. That, under such circumstances, he has the right to redeem from the prior mortgage is too well settled to need further discussion now. (2 Story Eq. Jur., § .1023; 4 Kent's Com. [11th ed.], 177; 1 Hilliard on Mortgages, 221; *Norton* v. *Warner*, 3 Ed. Chy. R., 106; *Western Ins. Co.* v. *Eagle F. Ins. Co.*, 1 Paige, 284; *Pardee* v. *Van Anken*, 3 Barb., 534; *Ellsworth* v. *Lockwood*, 42 N. Y., 89; *Dings* v. *Parshall*, 7 Hun, 524.)

It is not necessary to go the length of holding (what is warranted by the general language used in some of the books), that a junior mortgagee, simply as such, has, under all circumstances, the right to pay off or redeem from a senior mortgage past due. Such a right may not exist when the senior mortgagee desires to hold his mortgage as an investment, and does not seek or threaten to enforce its collection. In such case the junior mortgagee may be in no danger of loss or embarrassment, and thus may not have any equitable right to disturb or interfere with the senior mortgage to which he is not a party, and for the payment of which he is in no way liable.

After the defendant had advertised the real estate for sale under judgment of foreclosure, the plaintiff claims that he made a tender of the amount due upon the judgment, and for the costs and expenses to that time in satisfaction and payment of the mortgage and judgment. But the referee has found that the tender was made, and that the plaintiff demanded at the time the right to redeem, and a transfer of the mortgage to him, and this finding of the referee is a fair inference from the evidence on the subject. A tender, to have the effect claimed for it by the plaintiff, should be

made in unmistakable terms. The mortgagee should not be left in doubt as to what is meant. Here the defendant evidently understood, and had the right to understand, that what plaintiff wanted was to redeem from and have a transfer of its mortgage; not that he wanted to satisfy and discharge it. The owner of the land subject to a mortgage, commonly called the owner of the equity of redemption, has the right always to pay and satisfy a mortgage past due. And it matters not whether he is personally liable to pay the debt secured by the mortgage. The right to discharge his land from the incumbrance is incident to the ownership, and when he makes a lawful tender he destroys the lien. (*Kortright* v. *Cady*, 21 N. Y., 343; *Stoddard* v. *Hart*, 23 id., 560; *Hartley* v. *Tatham*, 1 Keyes, 222.)

But, as before stated, a junior incumbrancer may not occupy the same position as the owner of the land. There is certainly not always the same reason for allowing him to discharge the incumbrance but whether he has the same right to discharge as the owner, it is not necessary to determine now, as plaintiff did not seek or offer to pay and discharge the mortgage and judgment. What he sought was a transfer of them to him, that he might enforce them against the land. If one desires to make a tender, which shall destroy the lien of an incumbrance, and have, so far as concerns it, the effect of payment, he must make an absolute tender of payment, which, if received, will discharge the debt and the incumbrance. Here no such tender was made. What the plaintiff did was a tender in the exercise of his right of redemption, with a demand that the mortgage and judgment be transferred to him. He desired to become a purchaser of the securities, and in such case the tender does not operate to destroy the securities, but gives the party a footing in equity to compel the transfer demanded, if he is otherwise entitled to it. Hence, it was properly held below that the tender did not cancel or discharge the lien of the mortgage or judgment. If, therefore, the tender was sufficient, the plaintiff was entitled to have the securities trans-

ferred to him, and whether it was or not depends upon circumstances now to be considered.

There was a judgment against the mortgagor, owned by Prime, which was older than either of the mortgages; and Lawrence, who then owned the fourth mortgage, desired to sell the same to plaintiff, who objected on account of the prior lien of the judgment. He then, for the purpose of inducing plaintiff to take his mortgage, procured from Prime a written instrument, whereby he agreed with him, Lawrence, that the lien of the judgment should be postponed, and should be considered subsequent to the mortgage. Thereupon Lawrence assigned the mortgage to the plaintiff; thereafter Prime caused an execution to be issued upon his judgment, and the mortgaged premises to be sold thereon. At the sale the premises were purchased for the defendant, and a sheriff's certificate of sale was given to it. It had no notice of the agreement postponing the lien of the judgment until after the purchase at the execution sale. After all this, it commenced the foreclosure of its mortgage. Upon these facts the defendant claims that the plaintiff was not entitled to redeem from and have an assignment of the mortgage, without also paying up and redeeming from the sheriff's sale upon the execution.

The referee decided against this claim, and also decided that the lien of defendant, under the sheriff's certificate, was subsequent to the plaintiff's mortgage, and whether the referee decided correctly or not, depends upon the effect of the agreement between Prime and Lawrence.

It is not disputed that the agreement was good between the parties thereto. There is no reason why plaintiff, as assignee, may not have the same benefit of the agreement which Lawrence could have had. Lawrence made the agreement for the benefit of his mortgage. Its purpose was to fix the relative position to be occupied by the two securities, and it affected and attached itself to the securities whoever owned them. The agreement made the mortgage the senior security, and its character as such was not destroyed by its sale to the plaintiff.

If Prime had become the purchaser at the sheriff's sale, it is not disputed that his title would have been subsequent to the mortgage. His general lien under the judgment would have been converted into a specific lien on the real estate covered by the mortgage. A purchaser at an execution sale can get no better title than the judgment actually gives him. If a judgment has been satisfied, although not canceled of record, even a *bona fide* purchaser under an execution issued upon the judgment will get no title. (*Wood* v. *Colvin*, 2 Hill, 566; *Carpenter* v. *Stilwell*, 11 N. Y., 61; *Craft* v. *Merrill*, 14 id., 456.)

The docket of a judgment is not for the protection of purchasers under the judgment. It is for the benefit of the judgment-creditor, and the protection of purchasers from the judgment-debtor. The sole purpose of an execution is to enforce a judgment for just what is due, and no more. An execution and the sheriff are instrumentalities provided by law, by which a judgment-creditor enforces his judgment, and the sheriff can give no better title or greater right by a sale on an execution than the judgment-creditor could give, if he were allowed to seize property and sell by virtue of his judgment without an execution. If the judgment is void or has been paid, the purchaser takes nothing. The rule of *caveat emptor* applies to every purchaser at a sheriff's sale, of either real or personal property, by virtue of an execution. He buys at his peril, and if by any valid agreement the judgment has lost its apparent position as a lien upon real estate, his lien under his purchase is just that which the judgment creditor had. It is true that thus purchasers at sheriff's sales may sometimes be misled, but the courts have ample power usually in such cases to relieve them.

It was no more necessary for Armstrong to record this agreement than it would have been to have recorded a written discharge or satisfaction of the judgment, if he had paid it to protect himself against a subsequent sale under the execution. The recording act has nothing to do with the case.

The plaintiff is in no way estopped. He did nothing to

induce the defendant to purchase.   It does not even appear that he knew of the sale and purchase under the execution at the time they transpired.   He was not bound to give defendant notice of the agreement or to record it.

We conclude, therefore, that the judgment was postponed to plaintiff's mortgage, and that he had the right to redeem from defendant's mortgage, and have the same assigned to him without also paying or redeeming from the judgment, and that the decision of the referee was right.

The order of the General Term, so far as it reverses the judgment entered upon the report of the referee, must be reversed, and that judgment affirmed; and so far as it affirms that judgment it must be affirmed, neither party to have costs upon the appeal to this court.

All concur, except ALLEN, J., not voting.

Judgment accordingly.