THE EMIGRANT INDUSTRIAL SAVINGS BANK, RESPOND-
ENT, *v.* ISABELLA B. CLUTE, APPELLANT, IMPLEADED WITH
MARKS COTTRELL AND OTHERS.

*Action to foreclose a mortgage — the validity of liens prior to the mortgage cannot be
contested — right of the mortgagee to be subrogated to the place of a prior mortgagee
whose mortgage has been paid — power of the court over the relief to be granted.*

In this action, brought to foreclose a mortgage, it appeared from the complaint
and answers that the premises in controversy were owned, in 1863, by one
Thomas A. Hall, who, at that time, to secure a portion of the purchase-money
thereof gave a mortgage for $6,000 to his grantor, Chamberlain. In 1864 Mrs.
Clute recovered a judgment against him by the name of Thomas Hall, which was
on February 4, 1865, docketed against him by that name. October 3, 1867, an
execution was issued upon the judgment under which the premises were sold to
Mrs. Clute, to whom a deed was delivered by the sheriff on February 17, 1869.
June 19, 1866, Hall conveyed the premises to Jane B. Hyde, who assumed the pay-
ment of the Chamberlain mortgage, and subsequently paid it partly with her
own money and in part with $5,500 borrowed from the Pearsalls, secured by a
mortgage upon the premises given to them by her. Subsequently the land was
conveyed to one Cottrell, subject to the Pearsalls' mortgage, which he assumed
and subsequently paid with money procured from the plaintiff, to whom he
gave a new mortgage for $6,000. At the time the mortgages were given and
the conveyances made, searches were made in the proper offices, but owing to
the omission of the middle letter of Hall's name the judgment against him was
not found, nor did any of the parties have notice of its existence.
*Held*, that although in this action, brought to foreclose the plaintiff's mortgage,
Mrs. Clute's title could not be attacked or defeated, nor its priority contested, yet
as the facts alleged showed that the plaintiff was equitably entitled to priority
in the collection of her debt over Mrs. Clute, and to revive and enforce the
original mortgage, and as issues of fact had been joined by the service of
answers, the court might properly try the action as an equitable one brought
for that purpose and permit the plaintiff to take any judgment consistent with
the case made by the complaint and embraced within the issues.

APPEAL from a judgment in favor of the plaintiff, recovered on
trial at the Special Term.

*J. T. Clute*, for the appellant.

*Bartholomew Skaats*, for the respondent.

DANIELS, J.:
At the commencement of the trial of the action, the counsel for
the appealing defendant moved to dismiss the complaint as to her,

for the reason that the question of the priority of the plaintiff's right to collect its mortgage debt, over her right as a purchaser under an execution issued upon the judgment, could not be tried in this action. She became the purchaser of the property and received a deed of it from the sheriff on or about the 17th of February, 1869. While the mortgage which was the basis of the plaintiff's action was not executed until the 30th of January, 1871. Her counsel is entirely correct in the position taken by him that the priority of her title could neither be tried nor defeated in an action for the foreclosure of the mortgage executed and delivered to the plaintiff, as she was not a party to that mortgage. For in a mere action of foreclosure, a title acquired prior to the execution of the mortgage can neither be contested nor defeated. This is the rule as it was settled previous to the adoption of the present system of practice (*Eagle Fire Co.* v. *Lent*, 6 Paige, 635), and it still continues to be the law. (*Emigrant Industrial Savings Bank* v. *Goldman*, 75 N. Y., 127.)

But the facts as they were alleged in the complaint presented a case upon which it could be well insisted that the plaintiff was equitably entitled to priority in the collection of its debt over the title acquired by this defendant. And that such relief was not demanded in the complaint was no legal impediment in the way of awarding it in the action. For issues of fact were formed by the service of answers on the part of the contesting defendants, and by section 1207 of the Code of Civil Procedure, where an answer has been served, the court may permit the plaintiff to take any judgment consistent with the case made by the complaint and embraced within the issue.

The facts as they were disclosed by the complaint and the answer showed that the premises in controversy were owned by Thomas A. Hall in November, 1863. To secure a portion of the purchase-price he executed and delivered a mortgage to Moses Chamberlain, his grantor, for the sum of $6,000; and this mortgage continued to be a lien upon the property when the judgment was recovered under which Mrs. Clute acquired her title. This judgment was recovered in 1864 against Hall by the name of Thomas Hall. It was docketed in the county of New York on the 4th of February, 1865. An execution was issued upon it on the 3d of October, 1867,

and under that execution the right, title and interest which Thomas Hall had in the premises on the 4th of February, 1865, or at any time afterwards, was what was sold by the sheriff to Mrs. Clute. The usual certificate of sale was filed, and the sheriff by his deed conveyed this interest to her on the 17th of February, 1869.

On the 19th of June, 1866, Thomas A. Hall, the owner, conveyed the premises to Jane B. Hyde, who assumed to pay the mortgage given by Hall to Chamberlain, and on the 18th of August, 1866, she did pay it by using and applying for that purpose $300 of her own money, and $5,500 borrowed by her from Edward and Phebe Pearsall. To secure this loan a mortgage was at the same time executed and delivered by her upon the property to the persons loaning the money, and the mortgage given by Hall to Chamberlain was also at the same time delivered to them. The title to the land afterwards passed by various conveyances to Marks Cottrell. He received his deed on the 14th of September, 1867. The property continued in his hands, as it was in his grantor, subject to the mortgage given by Jane B. Hyde to Edward and Phebe Pearsall, which he assumed and agreed to pay as part of the purchase money. The title remained in him in that manner until the mortgage was executed and delivered by him to the plaintiff in this action upon the loan of $6,000. This money was obtained and used to pay off the mortgage given by Jane B. Hyde to Edward and Phebe Pearsall, and at the time of such payment their mortgage was taken up and surrendered to the plaintiff. Neither of the parties to these transactions had any actual knowledge of the recovery or docketing of this judgment against Hall. Searches were made of the title, but they were made as to the title of Thomas A. Hall only, and being made in that manner did not disclose judgments against Thomas Hall, and no actual information was acquired of the existence of the judgment, its docket, or the sale, and deed made under it, until after the time when Cottrell became the owner of the property. And even then, because of the omission of the initial letter in the name of the judgment debtor, the judgment was not deemed to be a legal incumbrance upon this property. And the mortgage upon it was taken by the plaintiff without any actual notice or information of the judgment, or the proceedings had under it, and in good faith.

These facts presented a cause of action in equity in no manner in

conflict with the rule to which reference has already been made. And such an action could properly be prosecuted and the appealing defendant be made a party to it, although its effect might be to subordinate her title to the mortgage lien existing against the property, prior to the time of the recovery of the judgment under which she derived that title. This would be an equitable cause of action to which she would be a necessary party. And if under the circumstances, the mortgage given by Hall to Chamberlain could be revived as a lien in favor of the plaintiff upon the property, it would be prior to her right and the court would be at liberty, and indeed it would be its duty, to order and direct a sale of the premises for the satisfaction of that debt, although the mortgage itself had been in form extinguished. For this was done in ignorance of the fact that the judgment had been recovered and docketed as a charge upon the property. In their dealings with it the parties acted in entire good faith, supposing no lien of this description to exist. And it was at the instance of the person whose title was bound for the payment of the original mortgage, that the money was advanced to, and used by her, by Edward and Phebe Pearsall. The object was not to extinguish the lien or the debt upon the property, but to change the right to it from Chamberlain to the Pearsalls. That design is clearly indicated by the facts and the surrender and delivery of the original mortgage to them. And the same thing is true as to the payment of her mortgage with the money advanced by the plaintiff. The intention of the parties was still to subject the property to the same priority of right, and it was evidently supposed that was accomplished by what appears to have transpired. In each instance the design was to secure to the lender of the money the same right as was vested in Chamberlain by the mortgage to him.

These rights vested primarily in the persons paying the respective mortgages, and if the action had been brought either by Jane B. Hyde or Marks Cottrell there can be no doubt, as the money was paid for the protection of their respective titles to the property, that the original mortgage could properly be revived in favor of either of them. This right was an incident of the title and could be equitably asserted to maintain and protect it; and when that title was mortgaged to secure the loan made for its preservation the

parties to whom the mortgages were respectively given necessarily acquired the same right.

This subject has frequently employed the consideration of the courts, and the principle is now well settled maintaining this right of substitution, or subrogation, in favor of the owner of the title where the payment may be made for its protection, and also for the benefit of parties intervening at the instance and request of such owner and making the same payment. (*Barnes* v. *Mott,* 64 N. Y., 397; *Cole* v. *Malcolm,* 66 id., 363; *Twombly* v. *Cassidy,* 82 id., 155; *Gans* v. *Thieme,* 93 id., 225.)

This latter case includes all that can be necessary to sustain such an action, for it was there held " that a volunteer cannot acquire either an equitable lien or the right to subrogation." * * * " but one who at the request of another advances his money to redeem, or even to pay off, a security in which that other has an interest, or to the discharge of which he is bound, is not of that character, and in the absence of an express agreement one would be implied, if necessary that it shall subsist for his use, and it will be so enforced." (Id., 232.) This point was also considered in *Clute* v. *Emmerich* (26 Hun, 10), where the same conclusion was maintained, although the decision itself may not be absolutely controlling as to the plaintiff's rights, inasmuch as it was not a party to that action. But the authorities abundantly sustain the proposition advanced that the original mortgage in an action of this description may be revived and enforced for the benefit of parties afterwards advancing their money upon the faith and security of the title.

The cases of *Kitchell* v. *Mudgett* (37 Mich., 81) and *Wade* v. *Beldmeir* (40 Mo., 486) may not be entirely consistent with the existence of this right. But if they are not, as the rule has been otherwise settled in this state, it must be followed in this action.

The defendant cannot deprive the plaintiff of this right to relief by her purchase under the execution, for she took only the title and interest which Hall had in the property at the time when the judgment under which she purchased was docketed, and that was a title subject to the mortgage indebtedness of Hall to Chamberlain. It has been urged that the purchase of the property, and the application of the purchase-price upon the judgment, without paying it

otherwise, vested her with the rights of a *bona fide* purchaser of the title and that she cannot be affected by an equity of this description.

*Wood* v. *Chapin* (3 Kernan, 509) has been cited and relied upon as sustaining this proposition, but while the point was discussed in one of the opinions, it was not definitely adopted or acted upon by the court. While in the case of *Frost* v. *Yonkers Savings Bank* (70 N. Y., 553) it was held in general terms, that "a purchaser at an execution sale can get no better title than the judgment actually gives him. * * * He buys at his peril, and, if by any valid agreement the judgment has lost its apparent position as a lien upon real estate, his lien under his purchase is just that which the judgment creditor had." (Id., 560.) Even if under the preceding case the purchaser under the execution could be held to be a *bona fide* purchaser, because of the payment of the expenses and fees attendant upon the sale, the right so acquired would not extend beyond the amount of money so paid. (*Huff* v. *Wagner*, 63 Barb., 215; *Weaver* v. *Barden*, 49 N. Y., 286.) In no view could she wholly defeat the right of the plaintiff and its mortgagor, to have the original mortgage revived and enforced for its benefit and the payment of this mortgage indebtedness. The Court, therefore, rightly refused to dismiss the complaint on the motion made for that purpose.

Neither was the appealing defendant entitled to have the answer of the defendant, Adam Emmerich, stricken out of the case. He was a party to the action, and had a right to answer, although it was not strictly necessary for the preservation of his rights for him to do so. He controverted neither of the allegations contained in the plaintiff's complaint. But by his answer assented to the judgment deemed to be appropriate in the case, and as the plaintiff's complaint had more at large included the entire case, there was no necessity for the service of this answer. But at the same time, as long as the plaintiff itself had not objected to its service, the answer could not regularly be stricken out at the instance of this defendant, when the cause came on for trial at the Special Term. The appealing defendant may have good reasons for complaining of so much of the judgment as awarded costs to Emmerich, inasmuch as this answer was unnecessary, but she could not insist upon its being stricken from the case.

Neither could she defeat the right of the plaintiff to relief by the judgment recovered by her against Marks Cottrell, the mortgagor in the last mortgage. This judgment ·was recovered for damages arising out of the wrongful withholding of the possession of the premises by Cottrell from the appealing defendant. The claim upon which it was recovered finally and ultimately accrued on the 21st of October, 1871, which was after the execution and delivery of the mortgage to the plaintiff, and the judgment itself was not recovered until the 13th of February, 1875. This claim having matured subsequently to the execution and delivery of the mortgage to the plaintiff, as well as the other mortgages, did not form the subject of set-off in the action. (*Jordan* v. *National Shoe and Leather Bank,* 74 N. Y., 467, 473, 474; *Taylor* v. *Mayor,* 82 id., 10, 16–19.)

But while the facts disclosing the plaintiff's right to the revival and enforcement of the original mortgage against the property were set forth and contained in the pleadings, the action was not tried upon that theory. It seems to have been supposed that they entitled the plaintiff to enforce its own mortgage against the property as a lien superior to the right of the purchaser under the execution; and that relief, and that only, has been ·provided for by the judgment. In this respect the case was erroneously determined, for if the plaintiff is only at liberty to enforce its own mortgage and to sell the property under it, then it must follow that the title previously acquired under the execution will be superior to that conveyed by the judgment, and neither the law nor the facts of the case will permit the court to secure to a purchaser under such a judgment priority over the rights acquired under the execution sale. The theory upon which the judgment was directed and entered was fundamentally wrong as long as the purpose and intention was to secure priority over the title obtained under the execution. To do that, the action should be tried as an action to revive and enforce the original mortgage. If that cannot be done, then the plaintiff must sell the property subject to the title acquired under the execution. If it can be done, then the sale will take place under a preceding incumbrance to which the title under the execution will be in all respects subordinate. As the judgment has been entered, therefore, it cannot be sustained, and the only manner in which this

right of priority can be secured to the plaintiff is by another trial of the action upon the theory already indicated; and as much as that was said in *Clute* v. *Emmerich* (*supra*) when that case was heard and decided.

The judgment from which the appeal has been taken should be reversed, with the usual costs and disbursements to the appellant to abide the event of the action, and a new trial of the issue should be directed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.