EMILY A. MOULTON, RESPONDENT, *v.* NEHEMIAH N. CORNISH, APPELLANT.

*Strict foreclosure — not abolished — holder of a second mortgage not made a party to the foreclosure of a first mortgage — costs of the former action — purchase with knowledge of the existence of a second mortgage — improvements made upon the premises subsequent to such sale.*

One Kellogg mortgaged three farms, of which he subsequently conveyed the equity of redemption to one McIntosh. McIntosh gave another mortgage upon the premises, which was assigned by the mortgagee to one Cornish. Emily A. Moulton, the owner of the first mortgage, heretofore brought an action to foreclose her mortgage, but failed to make Cornish a party thereto, and upon the sale purchased one farm, the two remaining farms being bought by others.

In an action of strict foreclosure brought by Emily A. Moulton to compel Cornish to redeem, if he was found to be the owner of the second mortgage:

*Held,* that as the defendant Cornish had not demurred, and as the relief sought did not impair his lien upon the other farms, and as his answer did not set up that the purchasers of the other farms were necessary parties to the action, he could not defend the action upon the ground that the purchasers of the other farms were not made parties to this action.

That the remedy by strict foreclosure has not been abolished by section 1626 of the Code of Civil Procedure.

That, upon a redemption under a strict foreclosure, the defendant should not be compelled to pay the costs of the former foreclosure.

That if the defendant desired to redeem, he should not be compelled to give a guaranty, executed by a responsible person and to be approved by the court, that he would complete the redemption within the time and in the manner provided by the judgment.

That where the plaintiff bought the premises upon the foreclosure sale with knowledge of the existence of the lien of Cornish, she should not be allowed to compel him, as a condition of redemption, to pay " the value of any improvements made thereon by her in good faith."

Appeal by the defendant Nehemiah N. Cornish from a judgment, entered in the office of the clerk of Oneida county on the 21st day of April, 1890, after a trial at the Oneida Special Term, with notice of an intention to bring up for review upon such appeal all the exceptions taken on the trial; also all those taken and filed to the refusals to find as requested, and also all those taken and filed to the decisions and findings of the court and the judgment entered. The judgment required the defendant to redeem the premises described in the complaint within a certain period of time or be forever barred from the right to redeem.

On the 10th of May, 1877, Amy H. Kellogg executed and delivered to Charles S. Symonds, as assignee in bankruptcy, her bond, conditioned for the payment of the sum of $8,650, and as collateral security for said bond she and her husband executed and delivered to Symonds, as assignee, a mortgage covering three farms, situated in the town of Floyd, known as the Klock, Eells and Tavern farms. The mortgage was recorded in the clerk's office of Oneida on the 9th of June, 1877, and on the 29th of December, 1877, the bond and mortgage were assigned to the plaintiff. On the 29th of January, 1878, Amy H. Kellogg and her husband conveyed the premises described in the mortgage to Ichabod C. McIntosh, by a conveyance which was recorded on the 5th of February, 1878. On the 1st of February, 1878, McIntosh executed and delivered to Miriam M. Kellogg a mortgage covering the premises, as security for the payment of $2,500, which was recorded on the 13th of February, 1878. By a written instrument, bearing date December 26, 1879, Miriam M. Kellogg, in consideration of $2,300 transferred the said $2,500 mortgage to the defendant, and the instrument was recorded December 29, 1879. On the 16th of May, 1886, the plaintiff commenced an action in this court to foreclose her mortgage, and a *lis pendens* was filed and a decree of foreclosure, naming the sheriff as a referee, was obtained and entered on June 15, 1889. The plaintiff obtained a search from the clerk's office, and by mistake or excusable inadvertence omitted to make the defendant Cornish a party to her foreclosure proceedings. At the sale made by the referee the plaintiff "bid off the parcel known as the Tavern farm for $6,095, and said sum was credited on the amount due her under the decree." The referee made a conveyance of the farm to the plaintiff, "and she and her

tenants have been in possession thereof ever since the 16th day of March, 1889." On the sixth of April the sale was confirmed by "an order of this court, the said Cornish appearing and opposing." The judge before whom the action was tried found, among other things, "that at the time of the commencement of this action the defendant Cornish claimed, and by the said search appears, to be the owner of the said $2,500 mortgage, given by said McIntosh to Miriam M. Kellogg, as aforesaid, and that his right of redemption had not been barred and foreclosed, and that said $2,500 mortgage is an existing lien on said lands." As a conclusion of law the court found that the defendant, " being the owner of said mortgage for $2,500, given by Ichabod C. McIntosh to Miriam M. Kellogg, February 1, 1878, to secure the payment of $2,500, holds the same as an existing lien on the lands bid off by the plaintiff on the foreclosure of the mortgage of Amy H. Kellogg to Charles S. Symonds, as assignee hereinbefore mentioned, subsequent to the lien created thereby, and the same was not cut off by such foreclosure, the said defendant not having been made a party in said action or having had an opportunity to be heard in court." The judge also found that the defendant was entitled to redeem, and prescribed certain conditions upon the exercise of such right, and prescribed the manner of ascertaining the amount to be paid by the defendant upon making such redemption, and, among other things, required him to pay the costs of the foreclosure made in the former action upon having such redemption, and allowed the defendant six months in which to pay the said bill, the amounts to be ascertained by a referee to be appointed ; and further found that if the said defendant shall desire to redeem the lands bid off by the plaintiff upon her said mortgage, he shall, within ten days from the service of a copy of the judgment herein upon him, or his attorney, give the said plaintiff notice of his said desire and intent to do so. Such notice shall be accompanied with an agreement by the defendant that he will complete such redemption within the time and in the manner in the judgment herein provided, and the performance of said agreement (the defendant being shown to be wholly irresponsible) by him shall be guaranteed by some responsible person whose responsibility shall be approved by a justice of this court, and which guarantee shall accompany said agreement ; and that if the defendant should not pay

and perform, according to the conditions stated in the findings, within six months, as aforesaid, "then it is ordered and adjudged that the said defendant, and all persons claiming under him, after the filing of the notice of pendency of action, do stand and be forever barred and foreclosed of and from all right, title, interest and equity of redemption of, in and to the said mortgaged premises so bid off by said plaintiff, to wit, the Tavern farm, so-called, and every part thereof; all liens he has upon said lands so bid off by the plaintiff by virtue of said mortgage of $2,500, or any other existing at the time of the commencement of said foreclosure action, are to be adjudged as cut off and foreclosed, and the plaintiff to hold the title thereto free from all such liens." It was also provided, in case such redemption was made "costs are not awarded to either party, except the costs of a referee, which shall be paid one-half by either party."

*Samuel Keeler* and *N. C. Moak*, for the appellant.

*C. M. & G. E. Dennison*, for the respondent.

HARDIN, P. J.:

(1.) We think the defendant cannot successfully complain that the purchasers of the Klock and Eells farms were not made parties defendant in this action. He took no objection to the complaint on that ground by demurrer, and the relief sought in this action does not impair his liens as to those farms; and, besides, his answer does not set up that such purchasers are necessary parties to this action. (*White's Bank of Buffalo* v. *Farthing*, 101 N. Y., 344.)

(2.) From an early day in the Court of Chancery, in England, it has been held that by the payment or tender of money, though after the day named in the mortgage, the mortgage should be considered as redeemed in equity, the same as it would have been at law if the payment had been made before the day; and, following that practice, bills were "filed by mortgagees for the extinction or foreclosure of this equity, unless payment were made by a short day to be named. The settled English practice is for the decree to order the amount due to be ascertained, and the costs to be taxed, and that upon the payment of both within six months, the plaintiff shall

reconvey to the defendant; but in default of payment within the time limited, that the said defendant do stand absolutely debarred and foreclosed of and from all equity of redemption of and in said mortgaged premises." (*Clark* v. *Reyburn*, 8 Wall., 323.)

In *Bolles* v. *Duff* (43 N. Y., 474) this practice was referred to in the following language : "Strict foreclosures are now rarely pursued or allowed in this State, except in cases where a foreclosure has once been had and the premises sold; but some judgment-creditor, or person similarly situated, not having been made a party, has a right to redeem. As to him, a strict foreclosure is proper. In general, a mere strict foreclosure is a severe remedy. It transfers the absolute title without any sale, no matter what the value of the premises." This practice was recognized in *Peabody* v. *Roberts* (47 Barb., 92); *Kendall* v. *Treadwell* (14 How Pr., 167); *Salmon* v. *Allen* (11 Hun, 32).

It is insisted in behalf of the appellant that section 1626 has cut off the equity practice as it has existed prior to the Code. We find in Thomas on Mortgages (p. 732, § 1143), and in Wiltsie on Mortgages (p. 929, §, 833), it is suggested that such possibly may be the effect of section 1626 of the Code; neither of the authors, nor does the appellant in this case, cite any authority for holding that such is the effect of section 1626 of the Code of Civil Procedure. That section is one of a series of sections prescribing for the ordinary action of foreclosure; notwithstanding that section, we think the remedy, as it has heretofore been used by courts of equity, remains. (*Wolff* v. *Ward* [Mo.], 16 S. W. Rep., 161.) The plaintiff in this case is not seeking a sale of the mortgaged premises. In the foreclosure of her prior mortgage a sale has been had and the title of the mortgagor has passed to her as a purchaser under that sale. She comes before the court stating that she has acquired the title to the premises in virtue of her mortgage and the proceedings for foreclosure thereof, and, in effect, asks the defendant to redeem the premises from her mortgage, and that the amount equitably due him by reason of the premises be ascertained, and that the defendant be given a period of six months in which to make such redemption. She further asks the equitable intervention of the court that, in the event he fails to redeem in the manner and within the period prescribed, he be forever foreclosed. If a sale had been asked for by

the plaintiff it would have been obnoxious to the objections stated. by DAVIS, J., in *Salmon* v. *Allen* (11 Hun, 32). In speaking of such a sale, he says: "That course would tend to throw the title into great confusion, for there can be no doubt that, as between the owner in fee and the other persons who were made parties to the foreclosure of Mrs. Allen's mortgage, her title to the lots under the foreclosure is complete, and her mortgage is extinguished by the conveyance to her of the fee under the decree. All the right that the plaintiff has, therefore, in equity, under his junior mortgage, is the right to redeem the premises from Mrs. Allen by paying off the amount of her mortgage and interest, unless she choose to come in and pay the amount of his mortgage for the purpose of perfecting her title. * * * We think it was not proper to have adjudged a sale of the fee of the premises subject to the lien of Mrs. Allen's mortgage, as the judgment in the court below does, but that, instead of such a judgment, a decree of redemption should have been entered in accordance with the established practice in equity. (*Gage* v. *Brewster*, 31 N. Y., 218; *Vroom* v. *Ditmas*, 4 Paige, 526; *Vanderkemp* v. *Shelton*, 11 id., 28; *Benedict* v. *Gilman*, 4 id., 58; *Pardee* v. *Van Anken*, 3 Barb, 534; *Brainard* v *Cooper*, 10 N. Y., 356; *Peop'e* v. *Beebe*, 1 Barb., 379; 2 Barb. Ch. Pr. [Rev. ed.], 193 *et seq.*, and notes.)"

The case before us is unlike *Walsh* v. *Rutgers Fire Insurance Company* (13 Abb., 33); that was an independent action by the second mortgagee to foreclose his mortgage, there having been a. foreclosure of a prior mortgage without naming him as a party thereto. Doubtless, at any time prior to the sale had in virtue of the proceedings upon the first mortgage, the defendant here might have maintained an action to foreclose his mortgage, and forced a sale in respect thereto, and had a sale and decree in such proceedings. (*Bache* v. *Purcell* 6 Hun, 518.)

(3.) We are of the opinion that the trial court fell into an error in requiring the defendant, in the case of redemption, to pay the costs of the former action in foreclosure.

In volume 1, book 2 of Blackstone's Commentaries, page 158, it is said: "But here again the courts of equity interpose, and though a mortgage be thus forfeited and the estate absolutely vested in the mortgagee at the common law, yet they will consider the real value

MOULTON v. CORNISH.

Fourth Department, November Term, 1891.

of the tenements compared with the sum borrowed. And, if the estate be of greater value than the sum lent thereon, they will allow the mortgagor, at any reasonable time, to recall or redeem his estate, paying to the mortgagee his principal, interest and expenses, for otherwise, in strictness of law, an estate worth 1,000 pounds might be forfeited for non-payment of 100 pounds or a less sum. This reasonable advantage allowed to mortgagors is called the equity of redemption, and this enables the mortgagor to call on the mortgagee, who has possession of his estate, to deliver it back and account for the rents and profits received on payment of his whole debt and interest, thereby turning the *mortum* into a kind of *vivum vadum* But, on the other hand, the mortgagee may either compel the sale of the estate in order to get the whole of his money immediately, or else call upon the mortgagor to redeem his estate presently, or, in default thereof, to be forever foreclosed from redeeming the same; that is, to lose his equity of redemption without possibility of recall."

The defendant was not a party to that action, and he has never become liable to pay costs, and we think it was improper to impose the payment of costs of that action as a condition of exercising the right of redemption. We think the question was fully settled in *Gage* v. *Brewster* (31 N. Y., 218). (See, also, *Peabody* v. *Roberts*, 47 Barb., 92; *Belden* v. *Slade*, 26 Hun, 635.)

(4.) We think the requirement to furnish a guarantee was unusual, and was an exaction beyond any precedent we have discovered in the numerous cases pertaining to a redemption. The remedy is sufficiently severe and harsh (*Bolles* v. *Duff*, *supra*), without having attached to it any unusual exactions.

(5.) We think the plaintiff's purchase of the Tavern farm was not subject to the mortgage of the defendant, the title and interest which she derived was as of the time of the date of her mortgage.

(6.) We recognize the rule that this court has the power to review the facts and consider the evidence, and to determine whether the findings accord with the weight of the evidence. (*Finch* v. *Parker*, 49 N. Y., 1; *Godfrey* v. *Moser*, 66 id., 250.) We have looked into the evidence, considered the same in connection with the findings, and we do not feel called upon to disturb the findings of fact made by the trial judge. The same are supported by the evidence, and are apparently in accord with the weight thereof.

( 7.) It is found that at the sale on the 16th of March, 1889, and before the sale had been made, the referee publicly announced the conditions and terms of the sale, and among the conditions he stated that the property was sold free and clear of any and all right of dower, charge or lien upon the same, "except that it is claimed by one Nehemiah N. Cornish that he is the owner by assignment of a mortgage made by Ichabod C. McIntosh to Miriam M. Kellogg, covering the premises, dated February 1, 1878, to secure the payment of $2,500, which mortgage was recorded in Oneida county clerk's office February 13, 1878, and is a record lien upon said mortgage premises. Cornish has not been made a party defendant to this action." It is also found, "That after such public announcement of said condition and terms of sale subject thereto, the plaintiff became the purchaser at the said sale of that portion of the mortgaged premises known as the Tavern farm, so called, for $6,095, particularly described in the complaint in this action." It is also found "that the plaintiff so purchased the same at said sale, with the knowledge of the lien of defendant's said mortgage, and the order aforesaid to make him a party defendant as aforesaid, and that he had not been made such party defendant." By the decision made at the trial it was provided that "the value of any improvements made thereon by her in good faith," be ascertained ; and the defendant be required to pay the same as one of the conditions of redemption.

In *Mickles* v. *Dillaye* (17 N. Y., 84), Judge DENIO, in stating the rule applicable to the right of redemption, says : "The general rule is, therefore, understood to be that upon taking the account in a suit for redemption against a mortgagee in possession, he is to be charged with the rents and profits, and be allowed only for necessary reparations. (*Moore* v. *Cable*, 1 Johns. Ch. R., 387 ; *Quin* v. *Brittain*, 1 Hoff. Ch. R., 353 ; Story's Eq., § 1016.) "

In *Benedict* v. *Gilman* (4 Paige, 62), improvements were allowed but it appeared " that the complainant was ignorant of the existence of these judgments until after he had made permanent improvements upon the premises to a considerable extent," and it was said "under such circumstances, it would be inequitable and unjust to give the defendants the benefits of those improvements without compelling them to pay an equivalent therefor. The case would

have been different, if the complainant had made the improvements with a full knowledge of the defendants' equitable right to redeem. (See *Moore* v. *Cable*, 1 Johns. Ch. R., 385)"

In *Wetmore* v. *Roberts* (10 How. Pr., 56), the rule laid down in *Benedict* v. *Gilman* (*supra*), was referred to approvingly, and the improvements were allowed "on the ground that Claxton, having purchased and improved as owner and in good faith, and the interest of the plaintiff at the time of the sale being of no value, it would be unjust for a court of equity to take from the former and give to the latter the value of these improvements." (See opinion of HAND, J., 10 How., 56.) In *Mickles* v. *Dillaye* (17 N. Y., 84), Judge DENIO refers to *Wetmore* v. *Roberts* approvingly.

In considering the rule as to when improvements may be allowed it was said in *Hubbell* v. *Moulson* (53 N. Y., 228), by ANDREWS, J., if the party in possession "has made permanent improvements upon the land in the belief that he was the absolute owner, the increased value by reason thereof may be allowed to him;" upon the doctrine so stated he refers to *Mickles* v. *Dillaye* (17 N. Y., 80). According to the finding which we have quoted, the plaintiff in the case before us had knowledge of the existence of the defendant's mortgage at the time of her purchase, and the rule as stated in *Hughes* v. *Edwards* (9 Wheat., 500), by WASHINGTON, J., should be applied. He says "the claim, therefore, of a purchaser with notice, to have the value of the improvements, which may have been made from the fruits of the property itself, deducted from the price at which the property may be sold, seems to the court too unreasonable to admit of a serious argument in its support. No case was cited, nor has this court met with one which affords it the slightest countenance."

In *Moore* v. *Cable* (1 Johns. Ch., 387), Chancellor KENT observed: "Many a debtor may be able to redeem by refunding the debt and interest, but might not be able to redeem under the charge of paying for the beneficial improvements which the mortgagee had been able and willing to make. The English courts have always looked with jealousy at the demands of a mortgagee, beyond the payment of his debt," and in that case his direction to the master to compute the principal and interest due on the mortgage contained a provision "that he allow for the expense of necessary reparations, if any, but not for improvements in clearing part of the land."

We think the Special Term fell into an error in directing the referee to ascertain the value of any improvements made by the plaintiff since her purchase of the mortgaged premises. If the foregoing views are adopted, it follows that the decision and judgment should be modified by eliminating therefrom: (1.) The provision as to the guarantee to be furnished by the defendant. (2.) The provision as to the costs of the former action. (3.) The provision as to the improvements made upon the Tavern farm since the purchase thereof at the foreclosure sale by the plaintiff, and after such modifications are made an affirmance of the order.

MARTIN and MERWIN, JJ., concurred.

Decision and judgment modified in accordance with this opinion, and as so modified affirmed, without costs of this appeal to either party  The form of judgment may be settled before HARDIN, P. J., upon five days notice.