HENRY C. HARPENDING, Appellant, *v.* EDGAR MUNSON et al., Respondents.

*It seems* that where a railroad corporation suffers default in the payment of its bonds secured by mortgage on its road and franchises, and in consequence the mortgage is foreclosed, and property sold, the sale cannot be attacked on the ground that the directors of the corporation were actuated by corrupt motives in· suffering the default, and that this was known to the trustee, in the absence of any claim of collusion between him and the directors.

*It seems*, also, that a director of a railroad corporation may properly own its bonds secured by mortgage executed by it, and may enforce payment in case of default by foreclosure.

*It seems*, also, that where a director so owning bonds of the company becomes the purchaser on foreclosure, an action cannot be maintained to impress

a trust upon the property for the benefit of stockholders, because of fraudulent conduct on the part of the director in procuring the default which caused the foreclosure, at least without paying or offering to pay to him the amount of the bonds. The equity of the stockholders, if any, is only in the surplus after payment of the bonded debt, and the action would be in effect a bill to redeem.

(Argued December 13, 1882; decided January 23, 1883.)

THIS action was brought by plaintiff, as a stockholder of the Sodus Bay and Corning Railroad Company, to redeem, as such, from a foreclosure and sale of the road, the same having been bid off by defendant Munson. Plaintiff also asked to restrain a proposed sale of the road by the purchaser. The material points discussed, with the facts pertinent thereto, appear in the following extract from the opinion.

" The action was brought upon the theory that the foreclosure was valid, and a good title passed to Munson; but that, in such good title, the plaintiff, as a redeeming stockholder, was entitled to share. When we decided that the statute allowing such redemption was repealed (*Pratt* v. *Munson*, 84 N. Y. 582), the whole cause of action was gone.

It is now sought to save it by treating it as something which it was not, and by a total change of the theory on which it was brought. That can rarely be permitted. (*Salisbury* v. *Howe*, 87 N. Y. 128.) Usually it operates as a deception, both upon the adversary and the court, and amounts to a trial under cover of an issue not openly avowed. Frankness and fairness required that we should always meet such a change of position with distrust.

But in any event the change is impossible. The action cannot be maintained, to set aside the judgment of foreclosure and the consequent sale as fraudulent and collusive. There are no such allegations in the complaint. On the contrary the validity of the mortgage is conceded; the due issue of bonds under it; their honest ownership by the holders; a default in the payment of interest; a regular foreclosure by the trustee; a regular sale, the allegation being that the referee ' *duly* sold said mortgaged property described in said judgment to Edgar Munson * * in all respects as directed by said judgment,'

the delivery of a deed to the purchaser, and confirmation of the report of sale. What is said in the complaint is entirely consistent with the validity of both judgment and sale. It is asserted that Munson's motives and purposes were bad and the mortgage trustee knew it. But that did not alter the fact of a default. It was out of the fact that the duty of foreclosure sprang. The trustee was not responsible for and had nothing to do with the motives of the debtor company in not paying its interest. There is no claim against him of collusion or fraud, nor even an allegation that Munson did not bid in the property for all it was worth. And the very relief asked affirms the sale, for it prays that plaintiff may be adjudged the owner of a proportionate part of the title which passed. Then, too, the corporation, which was the mortgagor, and the defendant in the foreclosure, is not a party to the action, and has not been heard, and cannot be adjudged guilty of fraud through its director, and the judgment to which it was a party be set aside, in its absence. Nor does it help to say, that the company, if a necessary party, might have been brought in. On the face of the complaint it was not a necessary party. That appeared to be and was an action by a stockholder to redeem and went upon the ground of the validity of the sale. To such relief and such cause of action the presence of the company was not essential, and nobody suspected or was bound to suspect that the cause of action pleaded was to be dropped, and one utterly inconsistent with it put in its place. But even then, with the company brought in, the sale could not have been attacked in the face of the complaint affirming its validity. It is claimed now that Munson could not be a purchaser because he was a director, and his trust duties in that respect were inconsistent with his interests as an individual. But an officer of a railroad corporation may honestly own its bonds secured by a mortgage. We have so held. (*Duncomb* v. *N. Y., Hous. & North. R. R. Co.*, 84 N. Y. 190. *S. C.*, 88 id. 1.) If that be true, he can of course enforce them in the usual and ordinary way, and if there be question as to his right to become the purchaser, that question cannot come up here, for the complaint expressly admitted his right, and alleged that the title on his

purchase was *duly* made to him.  So far, therefore, as this action is concerned the foreclosure and sale must stand and be deemed valid.

It follows that the action cannot be sustained to restrain the sale to Magee, or the Syracuse, Corning and Geneva Railroad Company, his assignee.  The foreclosure sale being valid, Munson became the owner of the property purchased, and could sell it as he pleased.   Even if by reason of fraudulent conduct on his part, for which the allegations seem sufficient, he was liable to an action at law for damages sustained, or some sort of a trust for the stockholders could be impressed upon the property in his hands, which theory would have its own difficulties, as we shall presently see, still the Syracuse, Geneva and Corning Company had a perfect right to buy of Magee, and he of Munson. They were under no obligation to refrain.   Their purchase is not charged to have been fraudulent, or the price paid unfair, and we cannot set aside their contract upon any ground which the complaint sets up as to them, for none such is pleaded.

But the most hopeful view of the case for the appellant is that which treats the action as brought to impress a trust upon the property in the hands of Munson for the benefit of stockholders, upon the ground that, as to them, he was a wrong-doer. Practically this means that he should be adjudged to hold the legal title which he had acquired for the benefit of the original company and its stockholders, because of his fraudulent conduct in procuring the default which culminated in the foreclosure.   Practically this would be equivalent to setting aside the sale.   But a further trouble with this view of the case is that he who seeks equity must do equity.  If Munson is to be treated as trustee his lien upon the legal title for his debt cannot be disregarded.   The bonds he held were honestly issued, and represent an honest debt, which the company or the stockholders are bound to pay before they take from him the property he has bought.   If he is not the absolute owner, he at least is such to the extent of his debt, and can defend his possession in equity until it is paid.   Granting that we may wipe out all that has been done, we cannot wipe out his debt or his lien.   The stockholders, therefore, can only impress a trust upon his legal title, and so re-claim the property for their benefit by first pay-

ing and discharging Munson's debt; and such an offer is essential to their right of action. The suit becomes a bill to redeem. (Sto. Eq. Pl., § 187, a.) But none such is pleaded or proved. The one pleaded is only of $171, and there is no offer of anything else. The equity of the stockholders, if they have any, is only upon the surplus of the property remaining after payment of the bonded debt. If there is no such surplus then they have lost nothing. If there is such surplus, or one may be realized, their equity must be confined to that, and they must pay the bonded debt, if they ask a court of equity to return them the property with the bonds and the mortgage extinguished by a foreclosure. And, in this view of the case, it is evident that the corporate mortgagor, representing the whole body of stockholders, and not a single one of the latter, is the proper party to assail as voidable in equity the legal title which has become vested in Munson. (*Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546.) No reason is shown why it would not or might not have brought the action."

*Charles S. Baker* for appellant.

*B. W. Huntington* for respondent.

FINCH, J., reads for affirmance.
All concur.
Judgment affirmed.