CHARLES W. TILLINGHAST, AS TRUSTEE UNDER A MORT-
GAGE OF THE TROY AND BOSTON RAILROAD COMPANY, BEARING
DATE SEPTEMBER 7, 1874, RESPONDENT, *v.* THE TROY
AND BOSTON RAILROAD COMPANY AND OTHERS,
APPELLANTS.

*Foreclosure of a mortgage on a railroad by one trustee — when the action will be stayed
where it is shown that it is brought to injure the owners of the bonds and benefit
the stockholders of the corporation — the relief may be granted upon a motion —
conditions upon which the action will be discontinued, stated.*

This action was brought to foreclose a mortgage executed by the Troy and Boston
Railroad Company, on September 7, 1874, to secure the payment of $1,500,000
of bonds, bearing interest at seven per cent, payable semi-annually, the principal
being payable on July 1, 1924. At the request of the holders of $79,000 of these
bonds, the plaintiff, Mr. Tillinghast, one of the trustees, commenced this action,
the other trustee, Mr. Gale, who refused to join as plaintiff, being made a
defendant, as was also, upon his own application, Mr. Plum, who held some
$21,000 of the bonds and acted for himself and other bondholders.

Upon an appeal from an order denying a motion, made by Mr. Gale and Mr. Plum,
for a stay of proceedings, it appeared that Mr. Gale, who owned $50,000 of the
bonds, acting at the request of persons owning bonds to the amount of about
$500,000, defended the action, and as such bondholder, and in behalf of all others
who might unite with him, offered to the plaintiff to pay up any of the bonds
secured by this mortgage, and on delivery of the bonds owned by the persons in
whose behalf the plaintiff was prosecuting the action, he offered to pay the costs
of this action on its discontinuance. It was charged by the moving parties that
the Troy and Boston Railroad Company and its directors and the Fitchburg
Railroad Company had entered into an agreement of consolidation into a new
company, and that, as part of that agreement, the new company was to issue
$1,500,000 bonds, at four per cent, for the payment of the bonds of the Troy and
Boston Company, secured by the mortgage, and that this foreclosure was a
scheme by which the holders of the bonds, secured by the said mortgage, were
to be deprived of the value of their long investment at seven per cent, and be
compelled to receive cash for their bonds or, at most, the new four per cent
bonds of the new company; and that the action was not brought for the benefit
of the bondholders, but only for the benefit of the debtor company and its
stockholders, who were, under the said agreement, to receive stock in the new
company in place of that which they then held.

*Held,* that, as the matters on which the motions rested were equities outside of the
issues, no relief could be given at the trial which would help the moving parties,
and that there was no reason why they should not ask the court (in its equitable
control of trustees) to compel, in a summary way, the trustee to stop such
injurious action.

That it was not necessary that an independent action should be brought to obtain the relief sought, as it could be granted as well on the motion.

That a claim made by the plaintiff that one who buys a bond secured by a mortgage buys something more than the right to receive the money, and that he may buy in order to secure the right to foreclose, for the purpose of clearing the title from subsequent incumbrances, could not be maintained, as a mortgagee has no claim to the land except as a security for his debt, and no interest in making the title perfect. •

That, in this case, if those bondholders who desired a foreclosure should receive all which could be obtained by it without delay or expense, they had no just ground for complaint.

That the persons offering to make this payment were not intruders or volunteers, forcing themselves in where they had no rights, but were co-beneficiaries in the mortgage trust and made the offer in order to protect their interests.

That the moving parties were entitled to the relief sought upon giving a bond by which they should agree to pay all bonds presented to them, within a time to be fixed, on delivery or assignment thereof.

APPEALS from two orders, made at the Rensselaer Special Term, denying motions for a stay of proceedings in this action.

*Charles E. Patterson* and *John B. Gale*, for the appellants.

*Esek Cowen*, for the respondent.

LEARNED, P. J.:

These are appeals from two orders, denying motions for a stay of proceeding, one made by James R. Plum, and the other by John B. Gale, individually and as trustee.

The Troy and Boston Railroad Company, on the 7th of September, 1874, executed the mortgage for the foreclosure of which this action was brought. It was a mortgage to secure $1,500,000 of bonds, bearing interest at seven per cent, semi-annually, and the principal payable July 1, 1924. Charles W. Tillinghast, the plaintiff, and John B. Gale, one of the defendants, are at ·present the trustees under said mortgage. The whole amount of bonds above-named has been issued. At the request of holders of $79,000 of these bonds the plaintiff has commenced this action to foreclose the mortgage. The other trustee, Mr. Gale, refused to join as plaintiff, and he has, therefore, been made defendant. James R. Plum, holding some $21,000 of these bonds, and acting both for himself and other bondholders, applied to be made a defendant, and the application was granted. The defendants, Plum and Gale, severally

put in answers in which are set up many matters which were afterwards relied upon on the motions for a stay of proceedings. It appears that bondholders, to the amount of over $500,000, addressed a request to the plaintiff, stating that this action was brought in the interest of the debtor company and its stockholders, and in hostility to the interests of the bondholders, and requesting the plaintiff to discontinue and to resign his office. These bondholders, or most of them, have requested Mr. Gale, the co-trustee, to resist this foreclosure. Mr. Gale is personally owner of $50,000 of these bonds; as such bondholder, and in behalf of all others who might unite with him, he offered to the plaintiff in this action to pay up any of the bonds secured by this mortgage, and on delivery of the bonds in whose behalf the plaintiff was prosecuting, he offered to pay the costs of this action on its discontinuance. As holder of $3,000 of bonds secured by a subsequent mortgage he made a similar offer; these offers required the delivery to him of the bonds which should be so paid up by him. The affidavit of Mr. Plum avers a similar readiness on his part, and on the part of those bondholders who act with him, to pay all bondholders who desire it the amount of their bonds and interest, and also to pay the costs of this action on its discontinuance.

It is charged by the moving parties that the Troy and Boston Railroad company and its directors have entered into an agreement with the Fitchburg Railroad Company, of consolidation into a new company by the same name with that of the last named company; that as part of that agreement the new company is to issue $1,500,000 bonds at four per cent for the payment of the bonds of the Troy and Boston secured by the mortgage of September 7, 1874. This appears in the articles of agreement. And these moving parties claim that this foreclosure is a scheme by which the holders of the bonds secured by the mortgage of September 7, 1874, are to be deprived of the value of their long investment at seven per cent, and are to be compelled to receive cash for their bonds, or at most the new four per cent bonds of the new Fitchburg Railroad Company.

And it is further stated that, owing to the high rate of interest and the length of time these existing bonds have to run, they are worth in the market considerably above par, of which market-value the bondholders will be deprived if this foreclosure is allowed to proceed.

It is in view of these facts that they say that this foreclosure cannot be for the real benefit of the bondholders, but is only for the benefit of the debtor company and its stockholders, which stockholders are under the aforesaid agreement to receive stock in the new company in place of that which they now hold. It has been urged, against these motions, that it was a matter which should be determined upon the trial, where all the facts could be litigated. But this cannot be. The matters on which these motions rests are equities outside of the issues. No relief could be given at the trial which would help the moving parties. They could only get their shares of the avails of the property, if the case should go on to judgment. And upon a trial what relief are they to have? That there has been a technical breach of the conditions of the mortgage is not disputed. Such breach gives a right of action against the mortgagor, and, that being shown at the trial, judgment would follow. But the question which these moving parties raise is one between themselves on the one side and their co-beneficiaries (viz., other bondholders) and the trustee on the other; the trustee who is bound to use his position for the benefit of all those interested in the trust, and for them only, not for the benefit of stockholders. If a trustee, holding a bond and mortgage for the benefit of his beneficiary were, by collusion with the mortgagor, to commence a foreclosure which would be injurious to the interest of his beneficiary, such beneficiary could not protect himself at the trial. But would there be any reason why he should not ask the court (in its equitable control of trustees) to compel, in a summary way, the trustee to stop such injurious action? If it should be said that such relief should be obtained by an independent action, the reply is that courts, in these days, do many things summarily in respect to actions pending before them, which perhaps formerly required an action. Where relief can thus be granted, and the facts show that it is just, then it is well to grant the relief on motion. (*Cole* v. *Malcolm*, 66 N. Y., 363; *Twombly* v. *Cassidy*, 82 id., 155.)

The plaintiff insists that one who buys a bond secured by a mortgage buys something more than the right to receive the money; that he buys the right to foreclose; that he may buy for the purpose of foreclosing and clearing the title from subsequent incumbrances.

But we think this is not correct. The mortgage is but a security for the debt. Payment, or even tender of the debt, not kept good, discharges the mortgage. (*Kortright* v. *Cady*, 21 N. Y., 343.) The mortgagee has no claim to the land except as a security for his debt. He has no interest in making a title perfect. He possesses no absolute right to clear the title, except by the wishes of the mortgagor or of the owner of the land. And even when he is foreclosing, a subsequent incumbrancer may at any time redeem, be subrogated and stop the foreclosure. Of course the motive with which the mortgagee bought his security is immaterial, so far as the mortgagor is concerned. (*Morris* v. *Tuthill*, 72 N. Y., 575.)

On the other hand, the person who sometimes desires to clear up a title by the process of a foreclosure, is he who holds the equity of redemption. Just as it may be that, in this case, the debtor company wish to use this trustee to clear up the title, or to clear off incumbrances for the benefit of the company.

It is said by plaintiff that sometimes a railroad is bankrupt under subsequent mortgages, while its first mortgage bonds are at a premium, and that in such case some of the holders of the first mortgage bonds might desire to foreclose and reorganize the road; that it would be unjust for others of the first mortgage bonds to prevent this. But it is very plain that, if the first mortgage bonds are at a premium, it would be an injury to the holders of these bonds to foreclose. It might be for the interest of stockholders to cause a foreclosure of the first mortgage and thus compel the first mortgage bondholders to take cash or a less rate of interest. But there would seem to be no reason in such a case why some of the first mortgage bondholders should compel a foreclosure against the wishes and against the interests of many other bondholders, when without foreclosure they could have all the money they could obtain by it. A foreclosure of the subsequent incumbrances would be effectual for the reorganization, leaving the first mortgage to stand and not destroying a valuable security.

It is said by the plaintiff that, when there is a default, any one of the bondholders (in the absence of special provisions to the contrary) may call on the trustees to foreclose, and may, even in case of refusal by the trustees, bring foreclosure himself. That doctrine, so far as the mortgagor is concerned, is not disputed. The question

before us respects the rights of the several bondholders between themselves. It calls for the application of the rule *sic utere tuo ut alienum non laedas.*

The several bondholders have equal beneficial rights in the mortgage. From the nature of the property, however, there cannot be a foreclosure to enforce a part only of the mortgage debt. If the railroad were a divisible thing, it might be possible to sell enough of the mortgage property to satisfy those bondholders who desire the foreclosure. But that cannot be. A foreclosure and sale must sell the railroad as a whole, and divide the proceeds *pro rata.*

Now, in this state of affairs, what is fair and just as between those bondholders (holding, in the aggregate, $79,000), who desire to have a foreclosure, and those (holding, in the aggregate, $500,000), who do not? Clearly, if those who desire a foreclosure shall receive all which they can obtain by a foreclosure, without delay or expense, they cannot complain. If the Troy and Boston Railroad Company should pay in full these bondholders who wish their bonds to be paid, then the foreclosure ought not to proceed against the wish of those interested in the remaining bonds. And though the Troy and Boston Railroad Company do not pay these bondholders, yet, if others, who are co-beneficiaries with them in the mortgage, are willing to pay them, why should this not be allowed? Such persons make this payment, not as intruders or volunteers, forcing themselves in where they have no rights, but as co-beneficiaries in the mortgage trust, to protect their interests. And when they make this payment they clearly should succeed to the rights of the persons whom they pay.

It is true that this is not strictly the case of a surety paying the debt of a principal and claiming subrogation. It is the case of two creditors, each secured by the same indivisible security. The one insists upon enforcing the security; the other, not desiring such enforcement, and seeing it to be injurious to his interest, offers to pay the former his whole claim and to take his place. It is most just and equitable that he should be allowed to do so. To illustrate : Suppose A and B each have a bond and mortgage on the same house. The mortgages have the same time to run and there is no priority of one over the other. Before they are payable, A, on default of payment of interest, begins a foreclosure,

making B a party; B says, I do not wish to have my mortgage foreclosed; A cannot foreclose without destroying my investment; I will pay A his claim and take an assignment. Would it be right to permit A to go on because, perhaps, he had some selfish expectation (on account of hard times) of buying in the house at a low rate and thus making a profit to himself at the expense of B? Now, as it appears that these bonds are above par, and as it is well known that, in these days, a seven per cent bond, running thirty-six years, of a solvent railroad must be above par, it does not need much argument to show that there must be some other motive in beginning this foreclosure than that of collecting the money secured by the bonds. This is not the first instance in which a reorganization of a railroad company has been attempted by the process of forcing first mortgage bondholders against their will to accept a new security at a less interest. The stockholders who hold a few bonds can afford the loss of interest on those bonds, when they consider the gain to their stock. The difference between four per cent and seven per cent would make, in this instance, $45,000 a year.

So far as the bondholders, who ask a foreclosure, are also stockholders, they are equitably part owners of the equity of redemption. They are to receive stock in the new company. They have, and will have, an interest in reducing the rate of interest by paying off these bonds with the avails of the new bonds at four per cent interest. Is it right that one whose property is subject to a mortgage debt should make use of the trustee of his creditors to compel them for his own benefit, and against theirs, to accept either payment before the debt is due or a reduced rate of interest? If to the case supposed above we add the further circumstance that A has become the owner of the equity of redemption, we shall see that it would be still more unjust that, for his own good, he should force a foreclosure against B's wishes, before the debt was payable.

The plaintiff cites *Harpending* v. *Munson* (91 N. Y., 650). That was an action by a stockholder to redeem from a purchaser under a foreclosure sale. Nothing in the remarks of the court touch this case.

If all the bondholders desired a trustee not to foreclose, it would hardly be thought his duty to disregard their desires. And the question here is, when some desire foreclosure and others do·

not, may not the latter pay the former their full claim and be subrogated thereto? Especially when it appears that a foreclosure. is not for the benefit of the bondholders, but for the benefit of the debtor company and its stockholders.

It is not necessary to discuss the question whether the right of subrogation always entitles the person paying to an actual transfer of the security paid. Certainly in the case of railroad bonds, secured by a mortgage, no subrogation to the rights of the bondholder could be safe and effectual, except by delivery or assignment of the bond. It may be admitted that if these bondholders, for whom plaintiff acts, had not asked for the foreclosure, there would be no right to pay them, and therefore no right of subrogation against them. (*Frost* v. *Yonkers Savings Bank*, 70 N. Y., 553.) It is because those bondholders are asking this foreclosure that Mr. Gale and Mr. Plum are compelled to offer to pay their claim, and, thereupon, to be subrogated. And, to show how far similar rights have gone, we refer to *Cole* v. *Malcolm* (*ut supra*); *Bayles* v. *Husted* (40 Hun, 376); *Pardee* v. *Van Anken* (3 Barb., 534).

Where a prior mortgagee is attempting to foreclose there is little doubt that a subsequent mortgagee may redeem and be subrogated. There is no distinction in equity between that case and a case where there are two mortgagees of equal priority and one proceeds to foreclose to the injury of the other. For the right comes from the interest in the mortgaged property and the necessity of paying the debt to avoid injury. Hence we think that, to protect themselves, Messrs. Plum and Gale, and those acting with them, had a right to offer to pay those bondholders who were urging foreclosure and on payment to have their bonds. Of course, this is not an absolute right to purchase these bonds. It is only a right to pay up those bondholders who desire to be paid. If no bondholders desire to be paid, then there is no need of the foreclosure and it should stop. If any of those bondholders who requested the foreclosure think that their securities are endangered by the failure of the Troy and. Boston Railroad Company to pay certain liabilities mentioned in the complaint, they will be relieved from any anxiety on that point, when they receive payment of their bonds from Messrs. Plum and Gale. All the peril of these prior unpaid liens will then be borne by Messrs. Plum and Gale and their associates. Of course, as the

holders of the bonds might not have been known, it was hardly competent for Messrs. Plum and Gale actually to pay. They could only make an offer.

In the view above expressed we think that Messrs. Plum and Gale were entitled to the relief they sought. The details cannot be fully stated in this opinion and must be arranged in settling the order. Substantially, Messrs. Plum and Gale must agree to pay all bonds presented to them within a time to be fixed on delivery or assignment. They must give a bond in a penalty to be fixed that they will do this. They must give public notice of their readiness to pay in a manner to be prescribed. If they shall do this, then plaintiff's proceedings must be stayed, and also stayed meantime. If in that time prescribed they shall pay all bonds thus presented and delivered or assigned, then on payment of plaintiff's costs the action may be discontinued.

LANDON, J., concurred; INGALLS, J., not acting. °

Order reversed, motion for stay granted according to terms of opinion to be settled by LEARNED, P. J.