[No. 1437.]

THE SHUTT INVESTMENT CO. v. THE CITY OF PUEBLO.

1. PRACTICE—ARBITRATION.

In an action against a municipal corporation for damage to property caused by building a viaduct, where the parties agreed to submit under direction of the court to two commissioners the question of what damage was suffered if any, the city attorney being authorized to make such agreement on behalf of the city by a resolution of the city council, and the questions were submitted as agreed and the commissioners returned their findings in accordance with the agreement and direction of the court, which report was not at the time objected to by either party, *held* that the findings of the commissioners were binding on both parties, and it was error for the court to afterwards submit the question of damage to a jury.

2. SAME.

Where in an action for damage the question of damage was by agreement of both parties submitted to commissioners to determine, the fact that the appointment and course of the commissioners was not in accordance with the common law and did not follow the statutory course of arbitration, would not entitle a party to have the question of damage submitted to a jury, unless the report of the commissioners be first set aside. The parties having agreed to the method of appointment and course of the commissioners, are bound by their acts unless a showing is made of misconduct on the part of the commissioners such as would authorize the court to set aside the report.

*Error to the District Court of Pueblo County.*

IN OCTOBER, 1894, the Shutt Investment Company brought suit against the city of Pueblo to recover damages done to property fronting on Mechanic street. Mechanic street ran northeast and southwest and was intersected by C street which ran northwest and southeast, though in the statement the general direction of these streets will be treated as north and south and east and west. Where Mechanic and C streets intersected, the city built a viaduct which ended at the south side of Mechanic street and therefrom an approach was built along C street across the whole width of Mechanic and ended very near the north side of Mechanic. According to the testimony the grade of C street was somewhat raised and the filling in which was necessary to make the approach made an elevation of six or seven feet or more on the southerly or easterly side of Mechanic street. The lots in controversy were on the westerly side of C street and the northerly side of Mechanic. The viaduct was built by the city to afford the citizens in the other part of the town a means of passage across the railroad tracks which lay to the other side of Mechanic. A triangular piece of ground which formed the southeasterly boundary of Mechanic street was occupied by warehouses. Various railroads running into the city had built main lines and side tracks along the level in front of it and had made passage impossible except by means of the viaduct. Along the point at which the tracks were built, the land was very much lower than Mechanic street. At what appears

to be the end of Mechanic street going in a southerly direction, there is no street or opening across which the travel or along which the occupants of the property located on the northwesterly side of Mechanic street could pass and repass in going to and from the property. The only outlet into and along C street or Mechanic street continued beyond the boundaries of C. Plaintiff's contention was that the construction of the viaduct and the approach to it had damaged his property and rendered it difficult of access, and that he had suffered injury for which he was entitled to maintain suit against the city. This was the principal point in the controversy. The lots had been antecedently owned by other parties but there were some transfers and a cause of action vested according to the allegations of the complaint in the plaintiff by proper assignment whereby it had the right to sue. While the suit was thus pending and undetermined by trial, the city council passed a resolution which is only referred to in order to show the authority of the city attorney to stipulate as he did. This resolution provided that in all damage suits pending against the city for the construction of the C street viaduct where the plaintiffs might be abutting owners, or where the district court might decide that a right of action was in the plaintiffs, the city attorney was authorized and instructed to have commissioners appointed by the court in which the suits might be pending to determine the damages sustained by the property owners. It authorized the attorney by stipulation to waive the right to trial by jury or otherwise, and procure an order for the appointment of commissioners and to stipulate that the award or awards of commissioners to be appointed should be final and binding. There was another provision in the resolution that the award should only be impeachable on the ground of fraud. We do not regard this as important because there is no provision of that sort contained in the stipulation under which the matter was referred. Afterwards, and acting under the authority of that resolution, if not under the general authority as the attorney for the city and of the

party defendant in the suit, on the 8th of January, the attorneys for the plaintiff and defendant made this stipulation:

" It is hereby stipulated and agreed by and between plaintiff and defendant that the court may enter an order in the above entitled suit, appointing two disinterested persons as commissioners to assess and determine the damages sustained, if any, by the premises described in said complaint, to-wit: In former town of South Pueblo, but now a part of the city of Pueblo, arising from or caused by the construction and maintenance of the C street viaduct and the vacation of B street at its intersection with Mechanic street. It is further agreed that the said district court or the district judge thereof, before whom said cause is pending, shall instruct the commissioners as to what damages, if any, to said property may be considered by them, and how the amount of such damages may be ascertained, and also the form of the report they shall make.

" It is further agreed that said commissioners shall, before entering upon the discharge of their duties as such commissioners, be sworn that they are not directly or indirectly interested in the said suit, or in the result thereof, and that they will impartially and fairly perform their duties as such commissioners, and assess and determine the damages, if any, sustained by said property from the causes aforesaid.

" It is further agreed that the finding and report of the amount of damages sustained, if any, by said premises shall be final and conclusive upon both parties hereto.

" It is further agreed that if said commissioners so appointed shall fail or be unable to agree and shall so report in writing to the court, that then the court, or the judge thereof before whom said cause is pending, may then appoint a third commissioner to whom, with the two already appointed, the matter of assessing and determining the damages aforesaid, and the agreement and finding of any two of the commissioners so appointed as to the amount of the damages sustained, if any, shall be final and conclusive upon the parties to this suit.

"It is further agreed that said commissioners shall within such time as may be fixed by court, make their report in writing under their hand and seal, as to the damages sustained by said premises, if any, and that upon the filing of said report the said court shall be and is hereby authorized to enter final judgment in favor of plaintiff and against said defendant for the amount of damages to said premises, if any, as assessed and determined by said commissioners in the report so filed, provided, however, that the said plaintiff shall have proved by testimony before the court, free from all exceptions, as to competency, relevancy or admissibility all controverted and material allegations of its complaint.

"It is further stipulated that if such report shall be to the effect that said premises have not been damaged, then the court shall and is hereby authorized, to dismiss said suit at plaintiff's cost."

The stipulation was filed, the court appointed Anderson and Beaman to act thereunder, and on the 12th of January, both parties being present by attorney, the court instructed the commissioners, arbitrators, referees, or whatever they may be called, respecting their duties and their powers, and pointed out and defined the course which they should pursue, the action they might take, and prescribed the form of the award. We do not deem it necessary to state in detail what the instructions were, nor shall we in the course of the opinion decide whether the court erred or did not err in any particulars in its statement of the law. This comes from the fact that the instructions were given by consent and without objection, were filed with the case, and the city in no manner and in no way raised any question as to the form, legality, rightfulness or sufficiency of them under the stipulation. Afterwards, and on the 28th of February, in accordance with the directions of the court, and under the stipulation, Anderson and Beaman filed their report and awarded damages fixing them at $9,000. The report was not objected to, nor was any proceeding had or taken thereunder to set it aside until some time later when as will appear from the record a committee

of citizens had been organized and employed the attorneys who filed the motion to vacate the finding and award. The motion to set aside the report was signed by the city attorney who had signed the stipulation as well as by the attorneys for the committee who may have been authorized and probably were to act on behalf of the city. Just why the city attorney should have filed a motion, or why he should attempt to attack proceedings to which he had consented, we are not advised. It is enough to state that this was done after the proceedings had resulted in a report on which according to the stipulation final judgment might be entered, if proof should be thereafter made of the controverted facts respecting title to the property, ownership of the claim, and the construction of the viaduct. To support this motion to set aside the report of the commissioners who had been appointed, sundry and divers affidavits were filed almost entirely on information and belief attacking the regularity of the proceedings. The motion was overruled and the court declined to set aside the report holding that there was no sufficient showing in support of the motion to warrant its vacation. This is assigned as cross-error by the defendant in error. Subsequently, and in the following November the case was set for trial. In reality there is no contest respecting the ownership of the property, the building of the viaduct, the assignment of the claim nor any other fact disputed save the one which was assigned by the counsel representing the city respecting the matter of damage. When the cause came to trial, the court ruled that the plaintiff must prove the disputed allegations of his complaint but that no question remained to be tried as to the amount of damages, holding that it was fixed by the award but determined that the question whether there was or was not damages was still open. It may be very safely stated that as the case proceeded the plaintiff sustained all the affirmative allegations necessary to show a cause of action other than the proof of the fact of damage, and rested. During the progress of the examination of the plaintiff's witnesses, the city attempted to cross-examine as to whether any

damage at all had been sustained. This was objected to but admitted by the court. When the defense proceeded their whole testimony was directed to the point that the plaintiff had suffered no damage at all; that the approach to the viaduct in no manner injured or hurt him, that ingress and egress to the property was substantially as safe and as easy and satisfactory as before the viaduct or its approach was built, and the city contented itself with the offer of testimony to this one proposition. On the conclusion of the case the plaintiff objected to the submission to the jury of the question as to whether there was or was not damage, which was overruled, the question submitted, and the jury then found that the plaintiff had not been damaged at all and that access to the property was not impeded by the construction of the viaduct. Thereupon judgment was entered in favor of the city, and to reverse it the plaintiff prosecutes this error.

Messrs. ARRINGTON & McALINEY and Mr. JOHN M. WALDRON, for plaintiff in error.

Mr. E. E. HUBBELL, Mr. M. J. GALLIGAN and Mr. S. H. WHITE, for defendant in error.

BISSELL, J., delivered the opinion of the court.

The verdict and judgment in favor of the city might perhaps be upheld if the parties to this litigation had undertaken to proceed under the statute to obtain a reference to determine the disputed questions of fact, or if they had attempted to enter into a common-law or statutory arbitration to reach the same result. So far as we are able to gather from the record what the parties did neither resulted in a reference nor in an arbitration. The proceeding was one wholly foreign to the statute and unlike most cases where the parties have attempted to settle their disputes through the labors of arbitrators. It might also be possible that the same end could be reached if the city was not wholly concluded by what its

attorney did under proper authority and by a consent which he was undoubtedly competent to give.  The record does not directly advise us, although it is very plain to be seen that the course pursued in the present case was taken because of a decision of the supreme court.  There was considerable litigation respecting this viaduct and a suit was brought by Strait v. The City, to recover the damages occasioned by the construction.  *City of Pueblo v. Strait*, 20 Colo. 13.

Therein the authority of the city to make the improvement and its responsibility for the resulting damage was determined.  The opinion was rendered at the April term, 1894. The present suit was tried and the proceedings which are attacked were taken after that decision was handed down, and we must presume that it was because of it that the city authorities concluded since it had been adjudged by the highest judicial tribunal of the state that the municipality must respond for damages sustained by contiguous property by reason of the construction of this improvement, that it was needless to litigate the question as to the city's liability and the easiest and least expensive method for the determination of this question was a reference of the matter to persons who might be selected who should view the property and decide the controversy.  At all events we are able to see in this case and in that opinion enough to lead us to the conclusion that this course was taken because thereby the liability of the city was established.  However the fact may be, it is enough for the purposes of this case to say that acting under sufficient authority, whether general or specific, the attorney representing the city in the suit pending in the district court, did make the stipulation contained in the statement of facts.  As we read it the stipulation admits of but one construction, and this construction compels us to reverse the judgment.  Under it the question of damages was referred to two men under the order of the court made in pursuance of it.  They were not referees neither were they arbitrators either under statutory provisions or the common law.  This however does not affect the finality of their decision, nor can it be held that their

conclusion is to be overturned so long as they proceeded according to the terms of the agreement and acted under and in accordance with the instructions which were given by consent of the parties. Courts have gone a long way to uphold this method of settling disputes and to sustain awards which may be said to be full of irregularities by reason of the conduct of the arbitrators. As we look at it, the stipulation provided that the arbitrators should determine two things · first, the question of damage, and second, the amount of it, for there could be no assessment of damages without an antecedent determination of the question of fact, whether or not any damage had been sustained. When we conclude, as we do, that the parties agreed that these two men, whether you call them arbitrators or referees, commissioners, or by some other title, should decide whether there had been any damage, and if so, how much, and that that finding should be conclusive and final, neither one of the parties except for some other reason than what appears from this record, can be heard to complain. To hold and to argue otherwise, is to give to the municipality rights and privileges which could not have been in the contemplation of the parties. If these commissioners had determined that no damage had been sustained, the plaintiff would have been concluded, and the question of damage or no damage could not afterwards go to the jury. The city would instantly have contended that the company was bound by the agreement of submission and that the report of the referees or commissioners was conclusive. The city cannot be permitted to hold any other or different position, and to have the advantage of two trials of the same question when they have submitted the matter to one tribunal of their own selection. The finding of damages to the extent of $9,000, *ex necessitate* established the fact that there was damage. The parties stipulated that the matters should be referred to these two gentlemen to determine, and how can they now say that they did not find on the question which of necessity must have been determined by them in order to render an award. This conclusion determines the error which inheres

in the judgment. After the report no question was open except on those issues raised by the complaint and answer, other than the question of damage, respecting which the court very properly said in its instructions to the jury, there was no controversy.

We are quite of opinion that this element of consent found in the stipulation and in the giving of the instructions and the failure to except or object to any of them, or to except to the report, or to object to it when it was filed, determines all these matters against the city which cannot now be heard to complain. *Farrington v. Hamblin*, 12 Wend. 212; *Yates v. Russell*, 17 Johnson, 461; *Harpending v. Munson et al.*, 91 N. Y. 650; *Flatter v. McDermitt*, 25 Ind. 326; *Wilson v. Wilson*, 18 Colo. 615.

It seems to be an almost universal principle from the very early times that wherever parties to an action consent to dispense with certain forms of procedure, or with the legal qualifications of the tribunal selected to try it, or to refer the matter to a jury or to any persons by them selected to hear and determine, the proceedings will bind the consenting parties, and irregularities will not be available for the purpose of attacking the result. As Lord Coke puts it, in the case cited in the 17th Johnson, "the consent of the parties shall alter the form and course of the law." The agreement is regarded as entirely obligatory, and a change of convictions or a belief that the judgment is too large, the finding too great, or that it ought to have been the other way, are not matters which may be urged by the consenting party nor thereon is he permitted to base an attack on the judgment, the finding and report.

The city has built up a very elaborate argument on the proposition that the course of these commissioners was not according to the common law and did not follow the statutory course of arbitration. If we concede this, it does not entitle the city to a trial of the question whether or not there was damage, unless the report be first set aside. The city consented to the method, granted the authority, and must be

bound by the acts of the commissioners unless they make a showing of such misconduct on their part as would authorize the court to set the report aside. This was not done. The court sustained the report. Its judgment we are not disposed to question, nor do we believe the cross-error assigned with reference to it will stand. The showing was almost entirely on information and belief, and there was nothing in it to establish such misconduct as would warrant the court in entering any other order. Since we sustain this order and the report stands it leaves the naked question which we have already decided as to the force and effect of the report of Beaman and Anderson who were directed to try and determine the question. From this it results that the court erred in leaving it to the jury to find whether there was damage. The only matters which ought to have been tried were the other issues in the case. Sustaining these issues, the plaintiff was entitled to the judgment on the report for the damages which they found.

The judgment entered on the verdict of the jury will therefore be reversed and the cause sent back for a new trial in conformity with this opinion.

*Reversed.*

WILSON, J., specially concurring.

I agree with my brother judges in their conclusion that the judgment of the district court should be reversed. I cannot concur, however, in their views as to the regularity of the proceedings in the trial court whereby it was submitted to two commissioners to assess and determine the damages, if any, sustained by the premises of plaintiff, nor as to the force and effect of the report and findings of such commissioners.

Conceding it to be true as a general proposition, that it is within the general powers of an attorney at law to submit the suit of his client to arbitration or reference, it does not always necessarily follow that the official attorney of a municipal corporation is invested with such authority. It may be

that under a statute such as ours, providing for the election of such an official, and that his powers and duties should be such as prescribed by the city council, he might be shorn of some powers which he would otherwise have in the management of the litigation of the city. I simply suggest this question, but in my view of the case presented, its determination is not necessary. Assuming that in the present instance, the city attorney, under his general powers as such, was invested with this authority, it cannot in my opinion be successfully contended that such authority extended any further than to allow him to submit the matters at issue to arbitration or reference in any other form or manner than that prescribed by the code. It must be conceded that the attempted submission to arbitration, reference, or whatever it may be called, and the procedure thereunder, was not in accordance with any form or method of arbitration or reference prescribed by the code, or by any statute. It seems to me, therefore, that the authority of the city attorney in this instance must be sustained, if at all, by the special power granted to him by a special resolution of the city council referred to in the opinion of the majority of the court and contained in the record. That portion of the resolution which is material to this discussion was as follows :

" The city attorney be and he is hereby authorized and instructed to have commissioners appointed by the court or judge in which such suits are pending, for the purpose of assessing or determining the damages sustained by such property, and for that purpose may by stipulation with plaintiffs, waiving right to jury or otherwise, procure in such or any such case order or orders of court for the appointment of such commissioners."

This action was to recover damages on account of private property being damaged by the construction of a public improvement for public use. Article 2, section 15 of the constitution provides, " That private property shall not be taken or damaged for public or private use without just compensation. Such compensation shall be ascertained by a board of

commissioners, of not less than three freeholders, or by a jury when required by the owner of the property, in such manner as may be prescribed by law," etc.   The statute of eminent domain follows the wording of the constitution, and provides that "such compensation shall be ascertained by a board of commissioners of not less than three freeholders, or by a jury when required by the owner of the property, as hereinafter prescribed."   The object of this suit being the ascertainment of the damages caused to property by a public use, the mode and method of which are specially provided for by these constitutional and statutory provisions, the resolution of the council should, in my opinion, be construed with reference to such provisions.   If the power to submit to arbitration or to a reference had been intended to be conferred, it is reasonable to suppose that language would have been used which would unmistakably have evidenced that intent.   Or if there were no provision in the constitution, or in the statutes, prescribing or regulating the manner in which such or similar damages should be ascertained or determined, it might be held that an arbitration was meant, although the precise words were not used.   The object sought being that which is consistent with and properly submissible to arbitration, the mere failure to use the word "arbitration," or "arbitrators," might not possibly be held to defeat the submission to arbitration under such power.   Here, however, they use the identical word, "commissioners," which is used in both the constitution and the statute in connection with the ascertainment of damages for injuries such as those alleged in the case at bar.   I think, therefore, that this resolution was intended to authorize and did authorize the city attorney only, to make no further contest over the liability of the city for damages caused by the construction of the public improvement, that having been settled by the supreme court, to waive any right which the city might have to submit to a jury the question of the amount of damages, and empowered him to secure the submission of such question to commissioners such as were contemplated by the constitution and the statute.   If this be true, no such

commissioners were appointed, as they were required to be not less than three freeholders.

I am not shaken in this conclusion by the fact that this proceeding or suit was not instituted nor prosecuted under the special provisions of the eminent domain act; that it was a suit begun by the party damaged, after the injuries had been suffered, and not by the city for the purpose of condemnation. It makes no difference in the principle. The constitution does not restrict the method provided for the ascertainment of such damages to any particular form of action, nor does the statute. The constitution also provides that where property is sought to be taken for a public use, the proprietary rights of the owner therein shall not be divested until the compensation shall be paid to him, or into court for his use. Such provision, however, does not extend to the damage of property for public use. In such case, it would in many instances be manifestly impossible to determine the damage until after the contemplated improvement had been constructed, and the alleged injuries inflicted. *Denver & S. F. R. Co. v. Domke*, 11 Colo. 255. In such case, the suit would usually be begun by the injured party, and that fact should not defeat the method prescribed by law for the ascertainment of the damages in such cases. It seems to me that the same constitutional and statutory provision should apply whether the proceeding was inaugurated by the party claiming to have suffered damage, or by the party seeking to enforce its right of eminent domain.

For these reasons, I am of opinion that the action of the trial court in submitting to two commissioners the question of the amount of damages sustained by the plaintiff in the manner in which it did, was irregular and wholly unauthorized, as was also the procedure therein, and that the report of the commissioners should have no legal or binding force or effect whatever.